**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-50869

Summary Calendar.

Bettye WARNOCK, Plaintiff-Appellant,

v.

PECOS COUNTY, TEXAS, et al., Defendants,

Alex Gonzalez, Individually and in his Official Capacity as Pecos County District Judge; Brock Jones, Individually and in his Official Capacity as Pecos County District Judge, Defendants-Appellees.

July 3, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

I.

Bettye Warnock, formerly auditor for Pecos County, brought this § 1983 suit to recover damages and obtain prospective relief from Pecos County and its two state district judges, Alex Gonzalez and Brock Jones. She alleges that these judges violated her First Amendment rights when they chose not to appoint her to a second two-year term as county auditor after she brought to light "violations of laws and administrative regulations of the State of Texas and of the policies and ordinances of Pecos County, Texas."

1

She sued the judges in both their official and individual capacities.

In an unsuccessful suit filed in Texas state court in May of 1993, she alleged that the county violated the Texas Whistleblower Act, Tex.Rev.Civ. Stat. Ann. art. 6252-16a (West 1993) (currently codified as amended at Tex. Local Gov't Code § 554.001 *et seq.* (West 1994 & Supp.1997)). Although this statute allows a state prosecutor to recover civil penalties from individual officials, it does not permit private suits against officials acting in their individual capacities. Tex.Rev.Civ. Stat. Ann. art. 6252-16a § 5(a); Tex. Local Gov't Code § 554.008. The county won a summary judgment in the trial court, and the Texas Court of Appeals affirmed.

Based on the whistleblowing suit, the district court below held that Warnock was precluded from recovering against the county. The district court dismissed the county with prejudice, and Warnock did not appeal.

Warnock did, however, appeal the district court's further conclusion that the Eleventh Amendment and qualified immunity principles barred her claims against the two judges. We vacated the judges' dismissals. *Warnock v. Pecos County,* 88 F.3d 341 (5th Cir.1996). We instructed the district court on remand that the Eleventh Amendment does not protect state officials acting in their official capacities from claims for reinstatement and attorneys'

2

fees when they violate federal law.  We also asked the court to reconsider the issue of qualified immunity in light of our opinion in *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995) (en banc).

On remand, the district court once again dismissed the judges in their official capacities, and Warnock has not appealed those dismissals.  With respect to the claims against the judges individually, Warnock followed the Rule 7(a) procedure that we outlined in *Schultea.*  The judges filed a response in which they argued that they were entitled to qualified immunity.  Although the county noted that it had already been dismissed, it filed a similar pleading urging the court to dismiss the judges on the grounds of qualified immunity.

Instead of deciding the immunity issue, the district court granted summary judgment on the theory that Warnock's state suit against the county precludes the present suit against the judges individually.

## II.

We cannot sanction this application of the doctrine of *res judicata.*  First, under Fed.R.Civ.P. 8(c), *res judicata* is an affirmative defense that courts generally should not raise *sua sponte. Carbonell v. Louisiana Dept. of Health & Human Resources,* 772 F.2d 185, 189 (5th Cir.1985).  We have recognized two exceptions, but neither applies here.  The prior suit was not brought in the Western District of Texas.  And the district court

3

does not appear to have had all relevant records before it and to have been confronted with "the demands of comity, continuity in the law, and essential justice." *Id.*

Second, even if the court properly raised the issue of *res judicata,* there was no identity of parties. Warnock did not sue Judges Gonzalez and Jones in her state action. Nor was there privity between the county and the judges in their individual capacities. *See Conner v. Reinhard,* 847 F.2d 384, 395 (7th Cir.) (holding that a prior suit against a municipality does not bar a subsequent suit against officials individually because official-capacity and personal-capacity suits involve different legal theories and defenses), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Headley v. Bacon,* 828 F.2d 1272, 1277-79 (8th Cir.1987) (distinguishing privity between principal and agent from privity between a governmental entity and officials sued in their individual capacities). *See also Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir.1990) ("Res judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity." (citing *Clark v. Amoco Production Co.,* 794 F.2d 967, 973 (5th Cir.1986))); *Restatement (Second) of Judgments* § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he

4

appears in another capacity.").

III.

Judges Gonzalez and Jones invite us to affirm the dismissal by reaching the issue of qualified immunity. Because the immunity question would almost certainly arise before the district court, and because we have access to all the relevant pleadings, we will decide it. We conclude, however, that Warnock has defeated the judges' immunity from discovery and thus that the judges' motion to dismiss should be denied. We remand for further proceedings consistent with this opinion.

A.

Warnock's Rule 7(a) reply lists dozens of violations of law or fiscal improprieties committed by county officials or compromising county funds. For each violation, Warnock indicates the year in which the incident occurred; in many cases, she indicates the month of the year. She also provides the names and offices of the state and county officials to whom she reported the violations. We have no trouble concluding that Warnock's Rule 7(a) reply is sufficiently detailed to satisfy the heightened pleading requirements that we reinforced in *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995) (en banc).

A sample of Warnock's allegations shows that her claim is sufficiently particularized. She asserts that she reported to Judge Gonzalez's chambers in June of 1991 that his wife had

5

improperly used county phone services. The next month, she told Judge Jones that the district attorney was holding forfeiture funds unlawfully. In January of 1992, she brought to both judges' attention alleged violations of Texas bidding statutes. She told the county treasurer on several occasions about matters such as the unauthorized release of pledged securities, incorrect amounts paid to the state, illegal early releases of paychecks, and violations of laws governing rapid deposits. She notified county officials of violations of state statutes on travel reimbursements. She told the commissioners court that its use of tax money for a prison water tank was improper. The list goes on. This detailed Rule 7(a) reply "alleg[es] with particularity all material facts on which [Warnock] contends [she] will establish [her] right to recovery, which ... include[s] detailed facts supporting the contention that the plea of immunity cannot be sustained." *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985). *See also Schultea,* 47 F.3d at 1434 (embracing "the practical core" of *Elliott* ).

The judges contend that most of Warnock's detailed allegations are irrelevant because only about a dozen involve reports to the judges themselves. Given the context, however, we will not require Warnock to plead the details of how Judges Gonzalez and Jones learned about each report to various state and county officials. The judges may not have known about every last report, but we can suppose that their duty to decide whether to re-appoint Warnock to

6

the auditor's office led them to inquire into her communications with entities such as the county treasurer's office, the county attorney's office, and the commissioners court. *See Siegert v. Gilley,* 500 U.S. 226, 236, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring) (asserting that the requirement of "specific, nonconclusory factual allegations" does not prevent a plaintiff from relying on circumstantial evidence).

B.

In order to survive the judges' motion to dismiss, Warnock's specific allegations must portray an objectively unreasonable violation of clearly established First Amendment law. *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793; *Burns-Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir.), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994). We conclude that, as described in Warnock's pleadings, the judges' decision not to re-appoint Warnock violated the First Amendment. We further conclude that the relevant First Amendment law was clearly established when the judges made their decision in 1993 and that firing a Texas county auditor for reporting violations of the law is objectively unreasonable.[1]

---

For our purposes, there is no difference between firing and declining to re-appoint. *See Branti v. Finkel,* 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980) ("[T]he lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs."); *Elrod v. Burns,* 427 U.S. 347, 359 n. 13, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976) (plurality opinion)

1.

Because Warnock is a public employee, her allegations must survive a three-part test in order to state a violation of the First Amendment. First, the relevant speech must involve a matter of public concern. Second, her interest in commenting on the matter of public concern must outweigh her employer's interest in promoting efficiency. And third, her protected speech must have motivated her public employer's decision to fire her. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (citing *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1050 (5th Cir.1996); *Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir.1990).

"There is perhaps no subset of "matters of public concern' more important than bringing official misconduct to light." *Davis v. Ector County,* 40 F.3d 777, 782 (5th Cir.1994). *See also*

---

(rejecting the notion that employees who accept partisan appointments have waived their right to bring a First Amendment suit when their political patrons lose power and a newly elected regime fires them based solely on party affiliation); *Brady v. Fort Bend County,* 58 F.3d 173, 175 (5th Cir.1995) ("Both "firing' and "failing to hire' are "triggering personnel decision[s].' "), *reh'g en banc granted* (5th Cir. Aug. 25, 1995) and *dismissed for lack of jurisdiction* (5th Cir. Nov. 17, 1995); *McBee v. Jim Hogg County,* 730 F.2d 1009, 1015 (5th Cir.1984) (en banc) ("[T]he fact that the deputies were terminated by a "failure to rehire' rather than a "dismissal' is irrelevant to the question of whether they were impermissibly terminated for exercising First Amendment rights." (footnote omitted) (citing *Branti* )).

*Connick,* 461 U.S. at 149, 103 S.Ct. at 1691 (finding that improper pressure on assistant district attorneys to work in political campaigns is a matter of public concern). By reporting specific wrongs and abuses within the county government, Warnock was attempting to improve the quality of government. Her allegations hardly suggest a merely personal concern for her working conditions, job security, and the like. The content, context, and form of Warnock's statements, *see Thompson,* 901 F.2d at 461-67, indicate that they addressed issues necessarily of concern to the public.

The defendants argue that Warnock was speaking as an employee rather than as a citizen and thus that her public employer could terminate her without regard to whether her speech involved matters of public concern. In essence, they contend that they could fire Warnock because it was her job to serve the public by investigating governmental waste and abuse. Citing *Connick,* we have announced that "our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee." *Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). But the plaintiff's statements in *Terrell* were tied to a personal employment dispute. *Terrell* does not stand for the proposition that an employee hired to make disinterested criticisms

9

of her employer loses the protection that the First Amendment grants to those who speak out in the public interest. *See Wallace,* 80 F.3d at 1051 (indicating that "speech made in the role as employee" can be of public concern when it "involv[es] the report of corruption or wrongdoing to higher authorities"); *Wilson v. University of Texas Health Center,* 973 F.2d 1263, 1269 (5th Cir.1992) ("[T]he rule proposed by the defendants could ironically facilitate the suppression of speech through a requirement that the speech be made."), *cert. denied,* 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

In weighing the value of Warnock's speech against the county's interest in efficiency, we generally focus on three factors: "(1) whether the speech was likely to generate controversy and disruption; (2) whether the speech impeded the general operation of the department; and (3) whether the speech affected the working relationships necessary to the proper functioning of ... County administration." *Davis,* 40 F.3d at 783. These factors help us determine when a worker's interest in protected speech fails to match up to the public employer's interest in having the employee contribute to the smooth operation of the workplace.

Warnock presents an unusual case because the Texas legislature has assigned auditors the task of disrupting the workplace when its smooth operation conflicts with legal requirements or compromises the public's interest in fiscal responsibility. In other words,

10

Texas gives county auditors responsibility for guarding the public purse and using the authority of the auditor's office to ensure that local governments comply with the law. Under Texas Local Government Code § 112.006(b), for example, "[t]he county auditor shall see to the strict enforcement of the law governing county finances." This involves "general oversight of the books and records of a county, district, or state officer authorized or required by law to receive or collect money or other property that is intended for the use of the county or that belongs to the county." Tex. Local Gov't Code § 112.006(a) (West 1988). Texas law requires the approval of the county auditor before a county pays any claim, bill, or account. *Id.* § 113.064(a). To make auditors' examinations effective, the legislature has given county auditors access to county records and accounts. *Id.* §§ 115.001-115.021; *id.* § 115.0035 (Supp.1997). Because the auditor is supposed to patrol county business and check any tendency toward corruption or inefficiency, the auditor's duties are discretionary rather than ministerial. *Smith v. McCoy,* 533 S.W.2d 457, 459 (Tex.Civ.App.—Dallas 1976, writ dism'd).

In the bulk of First Amendment cases brought by public employees, the governmental employer has a legitimate interest in terminating employees whose criticisms intrude on the workplace harmony that tends to facilitate the efficient operation of government functions. In this case, however, the statutes of the

State of Texas articulate an interest in stirring up controversy when county auditors discover misappropriations of county funds. Although Warnock's position was not merely ministerial, she was not a "policymaker" hired to implement the agenda of the county or the judges. As the statutory scheme shows, Warnock was to use her discretion to scrutinize county expenditures, not to enable county officials to spend money as they saw fit. The job of county auditor, then, is not within "that narrow band of fragile relationships requiring for job security loyalty at the expense of unfettered speech." *Gonzalez v. Benavides,* 712 F.2d 142, 150 (5th Cir.1983).

At this stage, of course, we are not in a position to determine whether any misappropriations or other violations have taken place. But if Warnock's allegations are true, and we say nothing about that, Judges Gonzalez and Jones may not rely on the county's interest in an efficient workplace. When a public employer grants an employee the task of serving as ombudsman within a particular field, it may not fire that employee for accurate and thorough criticisms of the relevant governmental practices.

Finally, Warnock must show that her protected speech caused Judges Gonzalez and Jones to decide not to re-appoint her. As we have noted, the allegations, if believed, could support an inference that the judges knew about the bulk of Warnock's reports. We also conclude that evidence supporting these allegations could

12

sustain Warnock's burden of demonstrating that her effort to air the county's fiscal problems was "a substantial or motivating factor" in the judges' decision. *Harrington v. Harris,* 108 F.3d 598, 603 (5th Cir.1997) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). At this stage, it is difficult to know whether Warnock had extensive auditing authority over Judges Gonzalez and Jones and their court staff. On remand, resolution of the causation issue may turn on whether the district judges had reason to prefer a less inquisitive auditor. We decide only that Warnock has raised an inference that the judges preferred a less aggressive advocate for county fiscal responsibility.

An inference is just that. We do not know what discovery may bring. We say only that Warnock's pleadings state a First Amendment violation.

### 2.

We must next ask whether the judges' qualified immunity protects them from having to answer Warnock's allegations. The judges are entitled to immunity from suit if "reasonable public officials could differ on the lawfulness of the [judges'] actions." *Cantu v. Rocha,* 77 F.3d 795, 806 (5th Cir.1996). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

13

which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Anderson v. Creighton,* 483 U.S. 635, 638-41, 107 S.Ct. 3034, 3038-40, 97 L.Ed.2d 523 (1987). The law in force at the time of the violation must outline the contours of the rights allegedly violated, or else qualified immunity would give public officials little protection. *See Anderson,* 483 U.S. at 638-40, 107 S.Ct. at 3038-39. But "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* at 640, 107 S.Ct. at 3039.

Warnock's term ended on March 5, 1993.[2] Case law prior to that date contained many discussions of what sort of speech implicates public concerns. Most importantly, the judges had the advantage of our opinion in *Wilson v. University of Texas Health Center,* 973 F.2d 1263, 1268-70 (5th Cir.1992), *cert. denied,* 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993), in which we explained that a public employee can make a single statement both as an employee and as a citizen. Like the plaintiff in *Wilson,* a police officer who reported sexual abuse to her superiors, Warnock "had a stake as an individual citizen in having [fiscal

---

At this stage in the proceedings, it is difficult to know when the judges made the decision that Warnock alleges violated the First Amendment. For the purposes of the motion to dismiss, we assume that March 5, 1993, is the relevant date. This assumption does not bar further factual or legal arguments about when the judges terminated Warnock.

14

irresponsibility] stopped, regardless of whether her reports also coincided with her job responsibilities." *Id.* at 1270. Furthermore, at the time of the judges' decision we had already declared that public officials must "engage in *McBee-Pickering-Connick* balancing before taking disciplinary action." *Click v. Copeland,* 970 F.2d 106, 112 (5th Cir.1992). In light of the purposes of Warnock's office, we conclude that First Amendment law at the beginning of March of 1993 clearly established that county officials may not terminate a county auditor for diligently monitoring county finances and speaking out about genuine fiscal problems.

Clearly established law will not defeat qualified immunity if "an objectively reasonable view of the facts" might lead an official not to realize that he was breaking the law. *Matherne v. Wilson,* 851 F.2d 752, 756 (5th Cir.1988). But our consideration of the judges' motion to dismiss does not present circumstances that suggest a misunderstanding of the facts. According to Warnock's particularized allegations, Judges Gonzalez and Jones had ample information about her surveillance of public funds and based their decision on what they knew about her aggressive enforcement efforts. With discovery, the able district judge will be able to take another look at the defense of qualified immunity and decide if the case should proceed to trial.

IV.

15

The dismissals of Judges Gonzalez and Jones in their individual capacities based on *res judicata* are REVERSED. We instruct the district court to deny the judges' motion to dismiss on grounds of qualified immunity and REMAND the case for further proceedings.

REVERSED and REMANDED with instructions.