**Hon. Marion M. LEWIS and Hon. Kemper Stephen Williams, III, Appellants,**

v.

**Ernest GUERRERO, Appellee.**

No. 13–98–191–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 1, 1998.

Rehearing Overruled Nov. 5, 1998.

David S. Morales, Asst. Atty. Gen., Austin, for Appellant.

Tracey Whitley, Austin, Jose Garza, Edinburg, for Appellee.

Before SEERDEN, C.J., and DORSEY and CHAVEZ, JJ.

## OPINION

DORSEY, Justice.

Appellants, District Judges Marion M. Lewis and Kemper Stephen Williams, III, appeal from an order[1] denying their summary judgment motion in response to appellee's suit based upon political discrimination under 42 U.S.C. § 1983. Appellants ask this Court to decide whether the trial court erred in denying their summary judgment motion based upon the affirmative defense of federal qualified immunity. We reverse and render.

Ernest Guerrero is the former county auditor for Refugio County, Texas. A majority

---

1. Appeal is statutorily authorized from an interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1998).

vote of the district judges having jurisdiction in the county appoint[2] the county auditor, who serves a two-year term. Guerrero served as Refugio County Auditor from September 10, 1971 to December 31, 1993. He was reappointed to this post eleven times. His last appointment was in 1991 and expired in 1993.

Judge Lewis is now a retired state district judge, who in 1993, served as administrative judge having jurisdiction over Refugio County. Judge Williams succeeded him as a state district judge on January 1, 1996.

### Procedural History

In 1994 Guerrero sued Refugio County, Refugio County Judge Charles Stone, and District Judges Marion Lewis, Whayland Kilgore, and Joseph Kelly for failing to reappoint him as Refugio County Auditor. He alleged age-and-national-origin discrimination under the Texas Commission on Human Rights Act (TCHRA), and he alleged due-process-and-political-discrimination claims under 42 U.S.C. § 1983. The trial court granted summary judgment for the defendants on all claims. Guerrero appealed, and this Court affirmed the summary judgment for Refugio County and Judge Stone and affirmed the TCHRA claim against the district judges. However we reversed the trial court's summary judgments for the district judges regarding the section 1983 claim for political discrimination and remanded this claim to the trial court for further proceedings. *See Guerrero v. Refugio County,* 946 S.W.2d 558, 573 (Tex.App.—Corpus Christi 1997, no writ) (*Guerrero 1*). After remand the district judges in October 1997 jointly moved for summary judgment based upon qualified immunity. The trial court granted summary judgment for Judges Kelly and Kilgore, but denied summary judgment for Judge Lewis. Judge Lewis did not appeal from this order. On November 21, 1997 Guerrero filed his sixth-amended petition, naming Judges Lewis and Williams as defendants. On December 30, 1997 Judge Williams moved for summary judgment on the basis he was not a proper party. The trial court denied his motion. On March 6, 1998 Judges Lewis and Williams jointly moved for summary judgment based upon federal qualified immunity. The trial court denied the motion. The case at hand involves their appeal from the latter order denying summary judgment.

### The Present Appeal

Refugio County Judge Charles Stone and the Refugio County commissioners decided to conduct audits of all county officials. An outside auditor performed two independent audits of Refugio County's general purpose financial statements; one was for the year ending December 31, 1991, and the other was for the year ending December 31, 1992. The outside auditor submitted the results in the form of management letters to Judge Stone and the commissioners court. According to the management letter pertaining to the year ending December 31, 1991 many county offices, including the county auditor, were deficient in accounting procedures.

On July 15, 1993 Judge Lewis, who at this time served as administrative judge having jurisdiction over Refugio County, received a letter from Judge Stone. The letter included copies of the management letters, and it explained most of the county offices given recommendations for needed changes in 1991 had made the corrections. The exceptions were the justice of the peace offices, elderly services, and county auditor. Judge Stone's letter stated he had "complaints" from the Director of Elderly Services concerning the auditor's (Guerrero's) inability to reconcile the discrepancies in her budget. Regarding the auditor's office he stated he had "serious concerns" the auditor was not following the outside auditor's recommendations. Judge Stone's letter stated:

> This Commissioners' Court wants an auditor that will be impartial, independent, capable and willing to perform the statutory duties and fulfill requirements of the position.... I hope that you and the other judges will consider opening the position up to other applicants that may be interested in applying while considering Mr. Guerrero's reappointment. In any

---

**2.** *See* Tex. Loc. Gov't Code Ann. § 84.002(b)(2) (Vernon 1988).

case and no matter who is appointed, serious consideration should be given to incorporating the recommendations from the management letters and all applicable statutory requirements into the order appointing the next auditor for Refugio County.

In a letter dated November 10, 1993 Judge Lewis advised Guerrero that he and Judges Kilgore and Kelly (the three judges in charge of appointing the Refugio County Auditor) wanted to interview him for the county auditor's job. Although the judges interviewed him they decided not to reappoint him. Judge Lewis informed Guerrero about their decision by letter, stating, in relevant part, "[W]e believe now is an appropriate time for *you to step aside in favor of a younger and more aggressive person, with no ties to any particular political group or affiliation.*" The italicized language served as a basis for Guerrero's suit.

On November 21, 1997 Guerrero filed an amended petition against Judge Lewis, in his individual capacity, and Judge Williams, in his official capacity [3] as successor-in-interest [4] to Judge Lewis. The crux of Guerrero's complaint is:

> Prior to Judge Stone's becoming County Judge, the Refugio County Judge had been Ginger Fagan. Judge Fagan and Plaintiff were perceived to be political allies and friends. Judge Stone perceived Judge Fagan and her political friends as rivals. Plaintiff was forced to inform Judge Stone on various occasions that his actions and advice to the County Commissioners violated the Texas Open Meetings Act.... Plaintiff also refused to approve the use of County resources on an improper expense. These actions by Plaintiff caused Defendant Stone's ill-will toward Plaintiff to escalate.

Guerrero alleged Judges Lewis and Williams refused to renew his appointment due to "political considerations" and his exercise of his right to free speech and freedom of association. Therefore, they acted under color of state law to deprive him of speech, associational rights, and due process of law under the First and Fourteenth Amendments to the U.S. Constitution. These violations gave him redress under 42 U.S.C. § 1983 for damages. He also alleged violations of article 1, sections 13, 19, and 29 of the Texas Constitution. He sought a judgment against appellants for: (1) reinstatement of his former position, or if reinstatement is impracticable, front pay from the date of his termination until he turned sixty-five; (2) backpay and benefits lost as a result of the refusal to reappoint him to his former job; (3) compensatory and punitive damages; (4) pre- and post-judgment interest; and (5) attorney fees and costs.

Appellants jointly moved for summary judgment asserting that the affirmative defense of federal qualified immunity barred the section 1983 claim. The trial court denied the summary judgment motion. They appeal from this order.

Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997), or pleads and conclusively establishes each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). When reviewing a summary judgment we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex. 1985).

■ When federal claims are litigated in state court, litigants are entitled to the full benefit of federal law. *Texas Education Agency v. Leeper,* 843 S.W.2d 41, (Tex. App.—Fort Worth 1991), *aff'd in part and rev'd in part on other grounds,* 893 S.W.2d 432 (Tex.1994); *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 243, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

---

**3.** In *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) the Court stated suits against state officials in their official capacity should be treated as suits against the State. *Hafer,* 502 U.S. at 26, 112 S.Ct. 358.

**4.** Ernest Guerrero substituted Judge Williams only in his official capacity for Judge Lewis because Judge Lewis had retired from office.

The first inquiry in determining if an individual defendant is entitled to dismissal based on his qualified immunity is whether the plaintiff has articulated a right which is protected by the United States Constitution. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The court must then ask whether the right was so clearly established in relation to facts similar to those confronted by the defendant that he can, under a reasonable person standard, be presumed to know that his conduct violated that right. *Doe v. State of Louisiana,* 2 F.3d 1412, 1416 (5th Cir.1993). "The touchstone ... is the 'objective legal reasonableness' of the defendants' conduct." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). As the Texas Supreme Court has recently observed, federal immunity law assures that more federal claims will be resolved at the summary judgment stage because, as a matter of law, the court is required to determine at the summary judgment stage not only the currently applicable law but whether that law was clearly established at the time an action occurred. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 657 (Tex.1994).

The sole issue in this appeal is whether the trial court erred in denying appellants' summary judgment motion based upon federal qualified immunity. Guerrero asserted he was not reappointed as auditor because of political considerations and for speaking out about genuine fiscal problems. Specifically, he refers to his political alignment with Judge Fagan, his criticisms of the commissioners court's practice of violating the Open Meetings Act, and his refusal to authorize illegal expenditures.

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)[5] the Court examined whether a public employer could fire an employee for political reasons under the federal constitution. In this context it held a public employer may fire an employee for political reasons when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. 1287. The Court's reasoning in *Branti* "has been understood to apply to political differences of any kind, not merely differences in party membership." *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990). The Court has allowed patronage dismissals in these limited circumstances because of the need to ensure "that policies which the electorate has sanctioned are effectively implemented." *Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

The general rule of qualified immunity is intended to provide government officials with the ability to reasonably anticipate when their conduct may give rise to liability for damages and, when applicable, officials can know they will not be held personally liable as long as their actions are reasonable in light of current law. *Anderson,* 483 U.S. at 646, 107 S.Ct. 3034. Qualified immunity may thus be properly invoked to protect "government officials performing discretionary functions to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In December 1993, the time Judge Lewis notified Guerrero the district judges had decided not to reappoint him, First Amendment law clearly established county officials may not terminate a county auditor for diligently monitoring county finances and speaking out about genuine fiscal problems. *Warnock v. Pecos County, Texas,* 116 F.3d 776, 782 (5th Cir.1997).

However because Guerrero was a public employee his allegations must survive a three-part test in order to state a First Amendment violation: (1) the relevant speech must involve a matter of public concern; (2) his interest in commenting on the matter of public concern must outweigh his

---

**5.** Jurisdiction was based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). *Branti,* 445 U.S. at 509 n. 1, 100 S.Ct. 1287.

employer's interest in promoting efficiency; and (3) his protected speech must have motivated his public employer's decision to fire him. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Warnock,* 116 F.3d at 780.

*Warnock* involved a former county auditor who brought section 1983 claims against state district judges alleging they refused to reappoint her in retaliation for reporting to various authorities numerous violations of laws and administrative regulations. The Fifth Circuit stated Warnock's speech involved a matter of public concern because it brought official misconduct to light. In weighing the value of Warnock's speech against the county's interest in efficiency the court focused on three factors: (1) whether the speech was likely to generate controversy and disruption; (2) whether the speech impeded the department's general operation; and (3) whether the speech affected the working relationships necessary to the proper functioning of county administration. The court said Texas law gave county auditors responsibility for guarding the public purse and using the authority of the auditor's office to ensure local governments followed the law. The court said Texas law "articulate[s] an interest in stirring up controversy when county auditors discover misappropriations of county funds." *Warnock,* 116 F.3d at 781. Because the statutory scheme provided Warnock was to use her discretion to scrutinize county expenditures, not to enable county officials to spend money as they saw fit, the court concluded the county auditor's job "is not within 'that narrow band of fragile relationships requiring for job security loyalty at the expense of unfettered speech.'" *Warnock,* 116 F.3d at 781, citing *Gonzalez v. Benavides,* 712 F.2d 142, 150 (5th Cir.1983).

Concerning the test's third part—whether Warnock's protected speech motivated the judges to decide not to reappoint her—the court said:

the allegations, if believed, could support an inference that the judges knew about the bulk of Warnock's reports. We also conclude that evidence supporting these allegations could sustain Warnock's burden of demonstrating that her effort to air the

county's fiscal problems was 'a substantial or motivating factor' in the judges' decision.

*Warnock,* 116 F.3d at 781, citing *Harrington v. Harris,* 108 F.3d 598, 603 (5th Cir.1997). The *Warnock* Court pointed out Warnock had reported some of the violations of law or fiscal improprieties to the judges who elected not to reappoint her.

■ In the instant case Guerrero's affidavit showed in 1991 during a meeting with the commissioners court two commissioners and Judge Stone admonished him due to his alignment with former Judge Fagan. They warned him that he "should hence forth be more 'independent.'" Over the next two years, Guerrero, on numerous occasions, voiced his concern the commissioners court was violating the Open Meetings Act by discussing and taking action on items not included on the posted agenda. Further, after consulting with the county attorney, Guerrero refused to authorize the expenditure of county resources for a membership to and contract for services with the Corpus Christi Area Convention & Visitors Bureau which the commissioners court was insisting he approve. Guerrero stated as a result of his political alignment with Judge Fagan, his criticisms of the commissioners court's practice of violating the Open Meetings Act, and his refusal to authorize illegal expenditures, Judge Stone, on the commissioners court's behalf, instituted a course of action and practice to harass him with the ultimate goal of having his appointment to the position of county auditor not renewed.

Judge Lewis' deposition excerpts showed Guerrero's counsel, Jose Garza, mentioned to Judge Lewis the letter sent to the interviewees for the county auditor's job included an explanation Judge Lewis was looking for someone with an understanding of the political process in rural county settings. Mr. Garza asked Judge Lewis if this was something raised as a problem with Guerrero. Judge Lewis replied:

I'd guess I'd say that these were my impressions but we discussed these matters because one, I think it's just a basic premise that the auditor has to be independent of the other officials in the courthouse and

we've had difficulty not—I would say in this particular regard not only here but in the other counties with the first thing we know is the auditors get involved with the other officials doing things and we're fearful that it tends to put them in a position of having to be too close, for example, the county treasurer.

Judge Lewis was aware Guerrero was politically aligned with former Judge Fagan in terms of how he ran the county auditor's office. He also knew Judge Stone "was not entirely satisfied with" Guerrero.

In *Guerrero 1* we explained in great detail the powers and duties our Legislature has assigned to a county auditor. *See Guerrero*, 946 S.W.2d at 566–70. We pointed out the Legislature's decision to place the power of the county auditor's appointment and dismissal in the hands of the district judges assured the "independent nature" of Guerrero's job. *See Guerrero*, 946 S.W.2d at 570. We conclude Judge Lewis had a legitimate interest in appointing an auditor who had no political ties to any particular group or affiliation in order to promote the effective performance of the office. *See Branti*, 445 U.S. at 518, 100 S.Ct. 1287.

Contrary to the facts in *Warnock*, the summary judgment evidence in the instant case does not show Guerrero's criticisms of the commissioners court's practice of violating the Open Meetings Act, or his refusal to authorize the illegal expenditure for the Corpus Christi Area Visitors & Convention Bureau motivated Judge Lewis not to reappoint him as county auditor. Accordingly the evidence does not show Guerrero's protected speech motivated Judge Lewis' decision. Guerrero has failed to state a First Amendment violation. *See Connick*, 461 U.S. at 142, 103 S.Ct. 1684; *Warnock*, 116 F.3d at 780.

We hold the trial court erred by denying appellants' summary judgment motion based upon federal qualified immunity.

6. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994) (holding government employees are entitled to official immunity from suits arising from the performance of their (1)

*Motion to Dismiss*

■ Guerrero has filed a motion to dismiss this appeal on the basis it is frivolous. His first basis for this motion is that in *Guerrero 1* we decided Judge Lewis was not entitled to either judicial or qualified immunity; therefore, our ruling in *Guerrero 1* is the "law of the case." We point out this present appeal does not involve judicial immunity. In *Guerrero 1* we said although Judge Lewis asserted qualified immunity in his summary judgment motion, he did not address Guerrero's section 1983 claim for political discrimination. Nevertheless, we stated he did not prove his defense of qualified immunity because he did not establish the "good faith element."[6] *Guerrero*, 946 S.W.2d at 573. Although the *Chambers* standard is derived from the *Harlow* standard which we applied above, the *Harlow* standard does not include a good-faith element. The *Chambers* standard is inapplicable to an assertion of qualified immunity in a section 1983 action. *Bexar County v. Giroux–Daniel*, 956 S.W.2d 692, 699 n. 4 (Tex.App.—San Antonio 1997, no writ). *See Hudson v. Vasquez*, 941 S.W.2d 334, 338 (Tex.App.—Corpus Christi 1997, no writ). Thus, the "law of the case" does not govern this appeal.

■ His second reason to support his motion to dismiss is that res judicata bars Judge Lewis' assertion of qualified immunity because, upon remand after *Guerrero 1*, Judge Lewis asserted this defense in his October 1997 summary judgment motion, and the trial court denied the motion. Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority).

*Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996). Res judicata does not bar this appeal because the trial court's denial of Judge Lewis' October 1997 summary judgment did not amount to a final adjudication of the issue of qualified immunity.

His third reason to support his motion to dismiss is Judge Williams has never asserted the defense of qualified immunity. Judges Lewis and Williams moved for summary judgment based upon federal qualified immunity in their motion filed on March 6, 1998. We deny the motion to dismiss.

We REVERSE the order of the trial court denying summary judgment and hereby RENDER a take-nothing summary judgment in favor of appellants.