# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-50333
(Summary Calendar)

ROBERT DURRETT,

Plaintiff-Appellee,

versus

EDWARD LEE VARGAS, Individually, and
in his capacity as Superintendent,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. EP-99-Cv-314-H

February 20, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant, Edward Vargas ("Vargas"), appeals from the district court's denial of a motion for summary judgment based on qualified immunity in response to the First Amendment retaliation claim of Plaintiff-Appellee, Robert Durrett ("Durrett"). For the reasons assigned below, we affirm.

FACTUAL AND PROCEDURAL HISTORY

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Vargas is the Superintendent of the Ysleta Independent School District ("YISD") where Durrett was formerly employed as the Associate Superintendent of Human Resources. During his tenure, Durrett learned of allegations raised against a Riverside High School teacher, Erasmo Andrade ("Andrade"), who had allegedly offered students a ten-point grade increase in exchange for distributing campaign literature for two YISD Board candidates.

In response to the allegations, the principal of Riverside High School requested that a YISD disciplinary review committee ("the committee") convene to investigate and determine whether Andrade had violated YISD policies. The committee kept Durrett abreast of its work. By the end of June 1999, Durrett learned that the committee members felt that Andrade had not only violated YISD policy but also the Educator's Code of Ethics as well.

Upon receiving this information, Durrett unilaterally filed a petition against Andrade with the State Board for Educator Certification ("SBEC"). The petition included a cover letter that Durrett signed as "Associate Superintendent," but the actual SBEC complaint made no reference to his position. Although he consulted with neither the committee, the YISD Board of Trustees ("the Board"), nor Vargas, Durrett copied documents from the committee's file and attached them to his petition. Durrett did, however, send a copy of the aforementioned complaint to Vargas, and by July 9, 1999, the committee formally issued its recommendation to terminate Andrade's employment.

On July 12, 1999, Vargas requested that Durrett withdraw his SBEC complaint. Merely informing Vargas that he would ask the SBEC whether such "withdrawal procedures" existed, Durrett gave the committee report to Vargas for placement on the Board's agenda regarding further action. In the following month, Durrett concluded that he was not required to withdraw his complaint, and on August 3, 1999, he filed an SBEC grievance against Vargas for directing him to

do so as well as for retaliatory conduct in the workplace. Ignoring Durrett's resubmission of the committee's recommendation, Vargas subsequently demanded that Durrett produce the relevant authority justifying his refusal to withdraw the SBEC claim against Andrade.

Durrett complied with Vargas's request the following day in a memorandum that referenced the Texas Administrative Code, but on August 9, 1999, Vargas implored Durrett to reconsider his decision. Durrett responded that his review of the file showed no reason to do so, and he refused Vargas's request. The next day, Vargas notified Durrett that he was suspended with pay pending termination of his employment for insubordination.

On September 22, 1999, Durrett initiated this lawsuit. The Board voted to terminate Durrett's employment on November 10, 1999. On the same day, Vargas filed a motion for summary judgment alleging that: (1) the incident in question was not a matter of public concern; (2) Vargas's concern in promoting efficiency outweighed Durrett's interest in commenting on the incident; (3) no reasonable public official would have viewed Vargas's actions as unconstitutional in light of the then-existing constitutional law; and (4) Durrett cannot bring a "right to petition the government" claim against Vargas because Vargas was unaware of any grievance at the time he suspended Durrett. The district court denied Vargas's motion, and Vargas now appeals.

DISCUSSION

I.    Appellate Jurisdiction

Ordinarily, this court lacks jurisdiction to review the denial of summary judgment because such a decision is not a final order under 28 U.S.C. § 1291. Palmer v. Johnson, 193 F.3d 346, 350 (5th Cir. 1999). However, the denial of summary judgment based on qualified immunity is reviewable under the collateral order doctrine if the denial is based on a conclusion of law. Id. Whether a public

3

employee's speech is constitutionally protected presents such a question of law. See Rankin v. McPherson, 483 U.S. 378, 386 n.9, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987) ("The ultimate issue–whether the speech is protected–is a question of law."); Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 377 (5th Cir. 2000) (stating that whether speech involves a matter of public concern is a legal question).

## II.      Standard of Review

Accordingly, we review de novo the denial of Vargas's motion for summary judgment predicated on qualified immunity. See Jones v. Collins, 132 F.3d 1048, 1052 (5th Cir. 1998). We apply the same criteria as did the district court in the first instance. Id. Therefore, "[s]ummary judgment is proper only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c)); Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55, 91 L. Ed. 2d 265 (1986). This court considers the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. Kennedy, 224 F.3d at 365.

## III.     Analysis

### A.      Qualified Immunity Standard

To determine whether Vargas is entitled to the protection afforded by qualified immunity, this court must engage in a two-part analysis. First, we must ascertain whether Durrett alleged a violation of a clearly established right. See Kennedy, 224 F.3d at 377 (citing Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). Second, we must decide whether

4

Vargas's conduct was objectively reasonable in light of clearly established law at the time of the alleged violation. See id.

        B.      First Amendment Retaliation

To make the first determination required under a qualified immunity analysis, we address Durrett's claim that Vargas violated his constitutional right to free speech by firing Durrett for refusing to withdraw his SBEC complaint. "An employee's First Amendment retaliation claim has four elements: (1) adverse employment action; (2) speech involving a matter of public concern; (3) the employee's interest in speaking outweighs the employer's interest in efficiency; and (4) the speech must have precipitated the adverse employment action." Kennedy, 224 F.3d at 366 (citing Teague v. City of Flower Mound, Tex., 179 F.3d 377, 380 (5th Cir. 1999)); Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999). Because termination of employment is an adverse employment action, Durrett's establishment of the first element of his claim is uncontested on appeal. See Harris, 168 F.3d at 221 (citing Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (reasoning that discharges are adverse employment actions)). The remaining three elements are, however, contested.

        1.      Speech involving a matter of public concern

It is plausible that in his SBEC complaint, Durrett spoke as a citizen concerned that a public educator had violated the law and ethical considerations. But Durrett also undoubtedly spoke as an employee because he signed the cover letter of his complaint in his capacity as Associate Superintendent. Thus, this is a "mixed speech" case. See Kennedy, 224 F.3d at 366.

Recognizing that "[m]ixed speech cases are perhaps the most difficult subset of employee speech cases to adjudicate," a panel of this court recently harmonized this circuit's precedent. Id. at

5

367. Three reliable principles for adjudication were gleaned: (1) the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government; (2) speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate; and (3) the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern. Id. at 372. These principles are applicable within the content prong of the content, context, form framework articulated in Connick v. Myers, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), for determining whether speech addresses a matter of public concern. See Kennedy, 224 F.3d at 373-375 (applying the aforementioned three principles of The Fifth Circuit mixed speech jurisprudence during analysis under the content prong of the content, form, and context test).

Vargas does not challenge that the content of Durrett's SBEC complaint implicated matters of public concern. Instead, he contends that the context and form of the speech mandate a contrary finding. We cannot agree.

#### a.    Content

The Supreme Court has concluded that forcing public employees to campaign for a particular candidate is a matter of public concern. Connick, 461 U.S. at 149. By dangling grade increases before students to entice their participation in campaigning for YISD School Board candidates, Andrade engaged in conduct that was a similar matter of public concern. Moreover, as a public teacher, Andrade's conduct was per se a matter of public concern. See Brawner v. City of Richardson, Tex., 855 F.2d 187, 191-92 (5th Cir. 1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection.").

6

The three <u>Kennedy</u> principles also suggest that the content of Durrett's speech was a matter of public concern. While the record does not disclose that an actual public debate was engaged when Durrett filed the complaint, the very existence of the SBEC shows the Texas Legislature's responsiveness to public concerns and debate regarding teacher accountability. Moreover, Durrett's SBEC complaint contained no personal matters and was not made in furtherance of a personal employer-employee dispute. Accordingly, the SBEC complaint spoke to matters of public concern.

b.      Context

The absence of any personal employer-employee dispute in Durrett's SBEC complaint also demonstrates that the context of Durrett's speech supports a finding that he spoke about a matter of public concern. Vargas nonetheless contends that Durrett's use of YISD resources while completing the SBEC complaint during working hours and signing the cover letter in his capacity as Associate Superintendent militate against a finding that the context of Durrett's speech was public. But this contention inadequately counters other evidence, which additionally supports a finding that the context of Durrett's speech was indeed public.

Specifically, at the time of Durrett's SBEC complaint, the Texas Administration Code provided: "*Any person*, including an educator or the parent of a student, may file a complaint against an educator." 19 TEX. ADMIN. CODE § 249.47(b) (emphasis added).[1] The Texas Legislature apparently considered ethical violations by teachers a matter of great public concern and contemplated filings such as Durrett's to be within that context. As such, Durrett was authorized to use his position as a district employee to gather necessary information to support filing a complaint.

---

[1] §249.47 was amended effective June 7, 2000, to read simply: "Any person may provide information to the agency regarding a possible violation of the code of ethics."

c.      Form

Durrett's SBEC complaint was not as removed from the public as an internal grievance and was not as publicized as a letter printed in the newspaper. However, the complaint was filed to bring wrongdoing to the attention of the public through a state agency. Although the record contains evidence that points to Durrett's acting in his private as well as professional capacity when he filed the SBEC complaint, this court has recognized that it is entirely possible for a public employee to "make a single statement both as an employee and as a citizen." Warnock v. Pecos County, Tex., 116 F.3d 776, 782 (5th Cir. 1997). Irrespective of his position as Associate Superintendent, Durrett had a stake as an individual citizen in reporting the misconduct of a public teacher. See id. (stating that the plaintiff "had a stake as an individual citizen in having [fiscal irresponsibility] stopped, regardless of whether her reports also coincided with her job responsibilities"). Thus, viewing the evidence in the light most favorable to Durrett, we agree with the district court that Durrett's SBEC complaint spoke to a matter of public concern.

2.      Balancing the interests of speech and efficiency

Having concluded that Durrett spoke on a matter of public concern, we must now determine whether Vargas's interest in the efficient operation of the YISD outweighed Durrett's interest in speaking on a matter of public concern. See Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). This determination requires this court to decide "whether the speech was likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the department's proper functioning." Harris 168 F.3d at 223. Vargas bears the burden of showing that his interest justified his termination

8

of Durrett. See Rankin, 483 U.S. at 388. In assessing these factors, the time, place, and manner of Durrett's speech are relevant. See id.

Vargas proffered his own conclusory affidavit that Durrett's complaint was disruptive as well as additional affidavits stating that Durrett's SBEC complaint could affect the efficiency of the YISD's operation. However, no actual evidence of the occurrence of such disruption or controversy is in the record. Durrett contends that this absence strikes the balance in favor of protecting his speech.

Neither Durrett nor Vargas disputes that the events, which precipitated this litigation, caused tension between the parties. However, they disagree on the proper characterization of Durrett's position. Vargas alleges that, as an Associate Superintendent, Durrett occupied a policymaker or confidential position such that the interests of the YISD in efficiency should more easily outweigh the interest of Durrett in speaking on matters of public concern. See Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 994-95 (5th Cir.) (en banc), cert. denied, 504 U.S. 941 (1992) (finding that the relationship between the school district's superintendent and its board of trustees is "close and confidential" because of the superintendent's special policy making responsibility). We note, as did the district court, however, that Vargas proffered no evidence and cited no statute suggesting that the same type of special relationship exists between the associate superintendent and the school district's board or superintendent. Moreover, we decline to extend Kinsey to encompass associate superintendents. As such, we are unpersuaded that Vargas and Durrett shared a working relationship essential to the proper functioning of the YISD that tipped the balance against protecting Durrett's speech.

9

By filing an SBEC complaint, Durrett spoke in a manner consistent with the design of the Texas Administrative Code in a place designated by the Legislature as the appropriate public agency. Durrett filed his SBEC complaint only after committee members informed him that they were going to recommend that Andrade be terminated. That the complaint preceded the committee's written memorialization of its recommendation in a report is inconsequential. Accordingly, the manner, place, and time of Durrett's speech support a finding that Vargas failed to present evidence of inefficiency, disruption, and controversy within the YISD sufficient to outweigh Durrett's interest in filing the SBEC complaint against Andrade.

C.     Reasonably Objective

For at least fifteen years before Connick, it was well settled that the "state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick, 461 U.S. at 142. After Connick, the balancing test required to equitably weigh with the divergent interests of the state and public employee was clearly established. Within this circuit, First Amendment jurisprudence further developed such that "'perhaps no subset of matters of public concern [is] more important than bringing official misconduct to light.'" Warnock, 116 F.3d at 780 (quoting Davis v. Ector County, 40 F.3d 777, 782 (5th Cir. 1994)); Brawner, 855 F.2d at 191-92. Accordingly, Durrett's allegation of First Amendment retaliation was based upon clearly established law. Therefore, to succeed upon his claim of qualified immunity, Vargas must demonstrate that terminating Durrett for refusing to withdraw the SBEC complaint was objectively reasonable in light of this clearly established law. See Kennedy, 224 F.3d at 377.

The district court correctly reasoned that Vargas should have known the law that governed his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 73 L. Ed. 2d 396

10

(1938) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing governing his conduct." ). In addition to Durrett's clearly established right to speak about Andrade's misconduct, Vargas has failed to identify any authority that required Durrett to withdraw the SBEC complaint after it was filed. Accordingly, Vargas's belief that he was authorized to compel Durrett to withdraw the SBEC complaint is objectively unreasonable.

Vargas alternatively argues that the proper scope of his reasonable objectivity is not whether Durrett's right to speak on the misconduct of a public official was clearly established but whether a reasonable official could conclude that Durrett filed the SBEC complaint in his official capacity. Thus, Vargas contends that the proper query is whether a reasonable official could believe that he had the right to request that Durrett withdraw the complaint. This myopic framing of the issue improperly focuses the objectively reasonable inquiry. While it is not this court's desire that Vargas "be punished for making an incorrect judgment call in this particular case," we must reemphasize that "the law is clearly established that a 'mix of public and private speech' may be constitutionally protected." Harris, 168 F.3d at 223-24. Accordingly, assuming that Vargas did in fact believe that Durrett filed the SBEC complaint in his official capacity, the law in this circuit is nonetheless clearly established that a public employee may speak as both a citizen and an employee. See id. As such, it was objectively unreasonable for Vargas to presume that he had authority not only to request that Durrett withdraw the SBEC complaint but also to fire Durrett upon his failure to do so.

CONCLUSION

The district court did not err in denying Vargas's motion for summary judgment based upon qualified immunity, and we therefore AFFIRM the ruling.

11

AFFIRMED.