NUMBER 13-02-096-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

WAYNE SCOTT AND 
GARY JOHNSON,                                                               Appellants,

v.

CHARLES GODWIN,                                                           Appellee.
                                                                                                                                      

On appeal from the 156th District Court of Bee County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Yañez
 

          Appellants, Wayne Scott and Gary Johnson, bring this interlocutory appeal from the
trial court’s orders denying their motions for summary judgment. Charles Godwin, appellee
and cross-appellant, filed suit against appellants in their individual capacities alleging First
Amendment violations under 42 U.S.C. § 1983, and against cross-appellee, the Texas
Department of Criminal Justice (“TDCJ”), alleging violation of the Whistleblower Act. 
Appellants each moved for summary judgment, contending they were protected by
qualified immunity. TDCJ filed a plea to the jurisdiction in the trial court. The trial court
denied both motions for summary judgment and sustained TDCJ’s plea to the jurisdiction. 
We affirm in part and reverse and remand in part.
A. Background
          Charles Godwin was the Director of Training for the Institutional Division of the
Texas Department of Criminal Justice (“TDCJ-ID”) from July 1994 to March 2000. In this
capacity, he was responsible for supervising the training of over 125,000 correctional
officers.
          In the Spring of 1999, Gary Johnson, the Director of TDCJ-ID, Edward Owens, the
Deputy Director for Support Services and Godwin’s immediate supervisor, and Godwin met
to discuss the creation of a committee to overhaul the TDCJ-ID Training Department after:
(1) the TDCJ-ID administration determined that the morale in the Training Department was
low; (2) the Training Department had difficulty recruiting training sergeants; (3) an internal
audit concluded that the Training Academy underutilized its existing staff and
recommended a job staffing analysis; and (4) Godwin complained that he did not have
enough training staff. The committee, comprised of people from a number of different
departments within the agency, examined ways to enhance training to improve the safety
of staff, offenders, and the public. The committee issued a draft report that summarized
its findings and scheduled a meeting for January 12, 2000 to finalize recommendations to
be submitted to the TDCJ-ID administration for review, approval, and possible
implementation.
          In December 1999, correctional officer Daniel Nagle was killed during an inmate
takeover at the McConnell Unit in Beeville, Texas. In response to this incident, TDCJ
officials advised the public that there was “no threat to security” and “no threat to officer
safety and offender safety.” Godwin strongly disagreed with these statements and wrote
a letter to then Governor George W. Bush on January 12, 2000, communicating his belief
that the incidents at the McConnell Unit were the direct result of dangerous trends in
security over the past several years, as a result of misuse of public funds, malfeasance,
and corruption. On January 14, 2000, the Corpus Christi Caller Times printed a story with
the headline “Prison Officials Should Resign, Training Chief Says.” In this article, Godwin
called for the resignation of TDCJ’s administrators and the members of the Texas Board
of Criminal Justice. On February 7, 2000, Godwin wrote a letter reiterating his complaints
to Ronnie Earle, the Travis County District Attorney, and sent copies of this letter to the
State Auditor, United States District Judge William Wayne Justice, and Godwin’s attorney. 
On February 28, 2000, Godwin sent a letter to the members of the Texas Legislature
outlining his concerns for correctional officer safety.
          In March 2000, Mac Stringfellow, the Chairman of the Texas Board of Criminal
Justice, requested a performance review of Godwin from Wayne Scott, TDCJ’s Executive
Director. On March 10, 2000, Scott, based on the recommendations of Gary Johnson and
Edward Owens, transferred Godwin from his position as Director of Training to a newly
created position of Director of the Job Development Network at TDCJ, with no loss of pay
or benefits.
          Godwin filed suit against appellants in their individual capacities, alleging First
Amendment violations under 42 U.S.C. § 1983. Appellants each moved for summary
judgment, contending they were protected by qualified immunity. The trial court denied
both motions. Godwin also filed suit against the TDCJ alleging violation of the Texas
Whistleblower Act. TDCJ filed a Plea to the Jurisdiction which the trial court sustained. 
From these orders, both appellants and Godwin appeal.
B. Jurisdiction
          Generally, we do not have jurisdiction over appeals from interlocutory orders
because under Texas procedure, appeals are allowed only from final orders or judgments. 
Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). Unless a statute
specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only
over final judgments. Cherokee Water Co. v. Ross, 698 S.W.2d 363, 365 (Tex. 1985)
(orig. proceeding).
          Section 51.014(a)(5) of the Texas Civil Practice and Remedies Code expressly
allows for an appeal from an order that denies a motion for summary judgment that is
based on an assertion of immunity by an individual who is an officer or employee of the
state or a political subdivision of the state. Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(5) (Vernon Supp. 2004). Section 51.014(a)(8) allows for an appeal from an
order that grants or denies a plea to the jurisdiction by a governmental unit. Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2004). Thus, because appellants,
TDCJ employees, base their motion for summary judgment on immunity, and the TDCJ is
a governmental unit, we have jurisdiction over this interlocutory appeal. See Mission
Consol. Indep. Sch. Dist. v. Flores, 39 S.W.3d 674, 675 (Tex. App.–Corpus Christi 2001,
no pet.); City of Harlingen v. Vega, 951 S.W.2d 25, 27 (Tex. App.–Corpus Christi 1997, no
writ).
C. Summary Judgment Based on Qualified Immunity
          Summary judgment for a defendant is proper only when the defendant negates at
least one element of each of the plaintiff’s theories of recovery, Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997), or pleads and conclusively establishes each
element of an affirmative defense. City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979). When reviewing a summary judgment, we take as true all
evidence favorable to the nonmovant and indulge every reasonable inference in the
nonmovant’s favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).
          When federal claims are litigated in state court, litigants are entitled to the full benefit
of federal law. Lewis v. Guerrero, 978 S.W.2d 689, 692 (Tex. App.–Corpus Christi 1998,
no pet.).
          The question of qualified immunity must be addressed as a threshold issue because
this issue determines a defendant’s immunity from suit, that is, his or her ability to avoid
a trial altogether, rather than merely his or her immunity from damages. Brewer v.
Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993). Qualified immunity is an immunity from suit
available to government officials sued in their individual capacities under section 1983.


 
Scott v. Britton, 16 S.W.3d 173, 180 (Tex. App.–Houston [1st Dist.] 2000, no pet.); Lewis,
978 S.W.2d at 693; see also Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit, 507 U.S. 163, 166 (1993). Government officials performing
discretionary functions have qualified immunity from liability for actions that do not violate
clearly established statutory or constitutional rights of which a reasonable person would
have known. Wilson v. Layne, 526 U.S. 603, 614 (1999); Scott, 16 S.W.3d at 180. Once
the defendant official pleads good faith and demonstrates that the challenged actions
occurred in the context of discretionary authority, the burden shifts to the plaintiff to rebut
this defense. See Carrera v. Yepez, 6 S.W.3d 654, 661 (Tex. App.–El Paso 1999, pet.
dism’d w.o.j.); see also Haynes v. City of Beaumont, 35 S.W.3d 166, 176 (Tex.
App.–Texarkana 2000, no pet.).
          When a defendant has moved for summary judgment based on qualified immunity,
a plaintiff must present concrete evidence to support the allegation of retaliation to survive
the motion. Gerhart v. Hayes, 201 F.3d 646, 650 (5th Cir. 2000). In conducting a qualified
immunity analysis, the reviewing court first determines whether the plaintiff has alleged a
violation of a clearly established constitutional right. See Siegert v. Gilley, 500 U.S. 226,
231 (1991); Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000). If the court
determines that the plaintiff has alleged a violation of a clearly established constitutional
right, the next step is to determine whether the official’s conduct was objectively
reasonable at the time of the incident. Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir.
1998); Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994).
          In the instant case, both Scott and Johnson asserted the defense of qualified
immunity in their respective motions for summary judgment. It is undisputed that each was
a governmental official. The summary judgment evidence established that Johnson’s
decision to recommend a transfer and Scott’s decision to transfer Godwin involved the
exercise of discretion. As such, the burden shifts to Godwin to rebut Scott and Johnson’s
qualified immunity defense.
1. Clearly Established Right
          Our first inquiry is whether the law was clearly established in 2000 that transferring
or demoting an employee following the publication of allegations involving official
misconduct would violate the employee’s First Amendment rights to free speech. “‘Clearly
established’ for purposes of qualified immunity means that [t]he contours of the right must
be sufficiently clear that a reasonable official would understand that what he is doing
violates that right.” United States v. Lanier, 520 U.S. 259, 270 (1997). The law in force at
the time of the violation must outline the contours of the rights allegedly violated, or else
qualified immunity would give public officials little protection. See Anderson v. Creighton,
483 U.S. 635, 638-40 (1987). But, “this is not to say that an official action is protected by
qualified immunity unless the very action in question has previously been held unlawful.” 
Id. at 640.
          An employee’s First Amendment retaliation claim under 42 U.S.C. § 1983 has four
elements: (1) an adverse employment action; (2) speech involving a matter of public
concern; (3) the employee’s interest in commenting on matters of public concern outweighs
the employer’s interest in efficiency; and (4) the speech must have motivated the adverse
employment action. Serna v. City of San Antonio, 244 F.3d 479, 482 (5th Cir. 2001).
a. Adverse Employment Action
          A transfer, even without an accompanying cut in pay or other tangible benefits, may
constitute an adverse employment action under 42 U.S.C. § 1983. The Fifth Circuit has
held that “[i]t is now well established that, for purposes of a § 1983 retaliation claim, an
adverse employment action can include a transfer, because it may serve as a demotion.” 
Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999). According to Fifth Circuit
caselaw, “to be equivalent to a demotion, a transfer need not result in a decrease in pay,
title, or grade; it can be a demotion if the new position proves objectively worse – such as
being less prestigious or less interesting or providing less room for advancement.” Id.
(citing Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996); Click v. Copeland, 970
F.2d 106, 109 (5th Cir. 1992)).
          In Sharp, the court held that the jury was entitled to find that transferring a police
officer from the “elite” mounted patrol division to a teaching position at the academy was
an adverse employment action. Sharp, 164 F.3d at 933. Although the transfer did not
involve a decrease in pay, title, or grade, it could be viewed, objectively, as a demotion
because the academy position was “less prestigious” than the position in the “elite”
mounted patrol division. Id. In Forsyth, transferring police officers from positions in the
intelligence unit to night patrol positions, with different duties involving less interesting work,
less responsibility, and less prestige, was an adverse employment action in light of
evidence that the department had transferred officers to night patrol in the past as a form
of discipline. Forsyth, 91 F.3d at 774. In Click, transferring two deputy sheriffs from the
county’s law enforcement section to positions as jail guards could be considered adverse
employment actions, in light of evidence that the jail guard positions were much less
desirable. Click, 970 F.2d at 110.
          This line of cases does not support the proposition that every job transfer without
a decrease in salary is necessarily a demotion, simply because it occurs following a
plaintiff’s exercise of protected speech. A plaintiff’s personal preferences and subjective
perception that a demotion has occurred is not enough. See Forsyth, 91 F.3d at 774. The
employee must show the transfer makes the job “objectively worse.” See Serna, 244 F.3d
at 485.
          In the present case, Godwin’s summary judgment evidence revealed that the
position of Director of Training for the TDCJ-ID was a more responsible, prestigious, and
interesting position than the Director of the Job Development Network. The Director of the
Job Development Network is not involved in personnel decisions, such as the decision to
hire, promote, counsel, and discipline employees. As the Director of Training, Godwin
performed all these functions. Godwin no longer has authority to issue internal policies and
procedures. The Director of Training has final approval over the Training Department’s
Standard Operating Procedures Manual. The Director of Training also has varied
challenges each day, including overseeing multiple training operations in multiple locations,
as well as directing administrative support, curriculum development, and human resources
for the department. The Director of the Job Development Network develops action plans
to identify employment opportunities for ex-offenders. We conclude the summary
judgment evidence, when viewed objectively, raises a material issue of fact regarding
whether appellants’ actions in transferring Godwin constituted an adverse employment
action.
b. Matter of Public Concern
          Retaliation for an employee’s speech is actionable under Section 1983 only if the
speech addressed a matter of public concern. Connick v. Myers, 461 U.S. 138, 147
(1983). Whether an employee’s speech addresses a matter of public concern must be
determined by the content, form, and context of a given statement, as revealed by the
record as a whole. Id. at 147-48. Whether Godwin spoke on a matter of public concern
is a question of law. See Rankin v. McPherson, 483 U.S. 378, 386 n.9 (1987).
          Exposure of official misconduct is generally of great consequence to the public. 
Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir. 2001). “There is perhaps no subset
of ‘matters of public concern’ more important, for purposes of First Amendment protection
of speech of public employees, than bringing official misconduct to light.” Id.
          Here, Godwin spoke in his capacity as a citizen expressing concerns regarding the
dangerous trends in security at prison facilities, as a result of possible misuse of public
funds and malfeasance. Godwin explained that the dangerous shortage of correctional
officers may be due, in part, to deliberate choices made by TDCJ officials to allow vacant
correctional officer positions to remain unfilled, in order to use lapsed salary funds for other
purposes. Godwin spoke as an informed citizen at a time when this topic was receiving
much media attention following the slaying of officer Nagle. Speech made in the context
of ongoing commentary and debate in the press is of concern to the public. Harris v.
Victoria Indep. Sch. Dist., 168 F.3d 216, 222-23 (5th Cir. 1999). By bringing to light alleged
wrongs and abuses by TDCJ officials, Godwin was seeking to improve the quality and
safety of the administration. Even though a public employee can make a single statement
both as an employee and as a citizen, see Wilson v. Univ. of Tex. Health Ctr., 973 F.2d
1263, 1268-70 (5th Cir. 1992), Godwin’s allegations do not overtly suggest only personal
concerns for his job security. Godwin was not under any investigation with regard to officer
safety at the detention centers following the death of officer Nagle. Thus, examining the
content, context, and form of Godwin’s speech, we conclude it involves issues of concern
to the public. See Connick, 461 U.S. at 147-48.
c. Employer’s Interest in Efficiency
          In determining the right of a public employee to speak on matters of public concern,
the interests that must be balanced are the interests of the employee, as a citizen, in
commenting upon matters of public concern and the interest of the State, as an employer,
in promoting the efficiency of the public services it performs through its employees. 
Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). In First Amendment cases brought
by public employees, the governmental employer has a legitimate interest in terminating
employees whose criticisms intrude on workplace harmony that tends to facilitate the
efficient operation of government functions. Warnock v. Pecos County, 116 F.3d 776, 781
(5th Cir. 1997).
          In weighing the value of protected speech against the employer’s interest in
efficiency, the Fifth Circuit generally focuses on three factors: (1) whether the speech was
likely to generate controversy and disruption; (2) whether the speech impeded the
department’s general operation; and (3) whether the speech affected the working
relationships necessary to the proper functioning of the administration. Id. at 780.
          In the instant case, these factors weigh in favor of a conclusion that Godwin’s
interest in speaking on matters of public concern outweighs the TDCJ’s interest in
efficiency because any negative impact that Godwin’s speech could have had on the
efficiency of the TDCJ was minimal. The summary judgment evidence established no
disruption of the training committee. No defense witness testified that Godwin’s speech
undermined the TDCJ’s operations. When asked whether TDCJ continued to operate in
a normal fashion, appellant Scott stated, “TDCJ keeps on operating no matter what
happens.” Further, Godwin’s employment relationship with TDCJ is not the kind of close
working relationship which requires personal loyalty and confidence for proper functioning. 
See, e.g., Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003) (relationship between
judge and law clerk).
          Thus, if the allegations of misconduct are true, such allegations are matters of public
concern and outweigh the government’s interest in efficiency. See Teague v. City of
Flower Mound, 179 F.3d 377, 381 (5th Cir. 1999); Brawner v. City of Richardson, 855 F.2d
187, 191-92 (5th Cir. 1988) (“The disclosure of misbehavior by public officials is a matter
of public interest and therefore deserves constitutional protection, especially when it
concerns the operation of a police department.”); see also Pickering, 391 U.S. at 568
(enforcing code of silence is not legitimate interest because it does not promote efficiency
of public services performed by government employees).
d. Protected Speech Motivated Adverse Action
          Godwin’s allegations, if believed, support an inference that appellants transferred
him in retaliation for publicizing the alleged abuses. Godwin’s summary judgment evidence
presented favorable employee evaluations. Godwin also points out that he was not being
investigated with regard to officer safety at the detention centers following the death of
officer Nagle. Whether an employee’s protected conduct was a motivating factor in an
employer’s decision to take action against the employee is a question of fact, ordinarily
rendering summary judgment inappropriate. Branton, 272 F.3d at 739; Click, 970 F.2d at
113.
          Thus, indulging every inference in Godwin’s favor as the nonmovant, we conclude
Godwin’s pleadings and summary judgment evidence allege a violation of a clearly
established constitutional right. See Wooley, 211 F.3d at 919. Godwin has a clearly
established right to speak on matters of public concern, see Denton v. Morgan, 136 F.3d
1038, 1042 (5th Cir. 1998), on matters of public safety, see Thompson v. City of Starkville,
901 F.2d 456, 466 (5th Cir. 1990), and on matters of official misconduct, Branton, 272 F.3d
at 740. Further, since 1983, government employers have known that unless their interest
in efficiency at the office outweighs the employee’s interest in speaking, they cannot take
adverse employment actions against their employees for making statements that relate to
the public concern. Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359,
377 (5th Cir. 2000); see Connick, 461 U.S. at 142. The contours of the right are sufficiently
clear that a reasonable public official in March 2000 would have known that retaliating
against an employee for exercising his First Amendment rights was prohibited by law. See
Lanier, 520 U.S. at 270; see also Kinney v. Weaver, 301 F.3d 253, 279 (5th Cir. 2002).
2. Legal Objectiveness
          The objective reasonableness of the official’s conduct is measured by the clearly
established right at the time of the incident. See Sanchez, 139 F.3d at 467; Mangieri, 29
F.3d at 1016. Where reasonable public officials could differ on the lawfulness of the
official’s actions, the official is entitled to qualified immunity. Johnston v. City of Houston,
14 F.3d 1056, 1059 (5th Cir. 1994). The objective reasonableness of the public officials’
actions is a matter of law for the court to determine; however, the underlying historical facts
precipitating the alleged conduct are material to reasonableness. Mangieri, 29 F.3d at
1015-16.
          Here, Godwin has presented a fact issue sufficient to survive summary judgment
as to whether appellants acted in an objectively reasonable manner in light of Godwin’s
clearly established rights. As discussed above, we have concluded that issues of fact
remain regarding whether appellants’ action in transferring Godwin constituted an adverse
employment action and whether appellants’ action was motivated by Godwin’s exercise of
his right to free speech.
          Thus, viewing the facts presented in the light most favorable to Godwin, we
conclude he has alleged a violation of a clearly established right and also raised fact issues
as to whether appellants acted in an objectively reasonable manner in light of Godwin’s
clearly established rights. Therefore, it follows that the trial court properly denied
appellants’ motions for summary judgment based on qualified immunity. We overrule
appellants’ issues. Accordingly, we affirm the trial court’s orders denying appellants’
motions for summary judgment.
D. Plea to the Jurisdiction
          By his cross-appeal, Godwin generally contends the trial court erred in sustaining
TDCJ’s plea to the jurisdiction and dismissing his whistleblower claim. Specifically, Godwin
alleges he was employed by the State and his employment was adversely affected
because he made a report of a violation of law, in good faith, to an appropriate law
enforcement authority. The trial court sustained TDCJ’s plea to the jurisdiction on the
basis that Godwin failed to report a violation of law to a proper law enforcement authority.
          A plea to the jurisdiction challenges a court’s authority to hear a case by alleging
that the factual allegations in the plaintiff’s pleadings, when taken as true, fail to invoke the
court’s jurisdiction. Bybee v. Fireman’s Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910, 917
(1960). The plaintiff bears the burden of alleging facts affirmatively demonstrating the trial
court’s jurisdiction to hear a case. Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d
440, 446 (Tex. 1993); Flores, 39 S.W.3d at 676. To successfully challenge at the pre-trial
stage a trial court’s subject-matter jurisdiction to hear a plaintiff’s claim, the defendant must
prove either that (1) the plaintiff’s pleadings, taken as true, affirmatively establish that the
court does not have subject matter jurisdiction, or (2) the plaintiff has pleaded fraudulently
or in bad faith with the purpose of conferring jurisdiction where, under the true facts, the
court would not have it. Flores, 39 S.W.3d at 676.
1. Standard of Review
          We review a trial court’s ruling on a plea to the jurisdiction de novo because subject
matter jurisdiction is a question of law. See Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998). In reviewing a trial court’s ruling on a plea to the jurisdiction, we do
not look to the merits of the plaintiff’s case. Tex. Bd. of Pardons & Paroles v. Feinblatt, 82
S.W.3d 513, 517 (Tex. App.–Austin 2002, pet. denied). Instead, we construe the
pleadings in favor of the plaintiff, look to the plaintiff’s intent, and accept the pleadings’
factual allegations as true. See County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.
2002). Pleadings relevant to a review of a plea to the jurisdiction include amended
petitions and responses filed in connection with the plea. Janik v. Lamar Consol. Indep.
Sch. Dist., 961 S.W.2d 322, 324 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). We
may also consider evidence necessary to resolve the jurisdictional issues raised. Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).
          When a plaintiff fails to plead facts that establish jurisdiction, but the petition does
not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading
sufficiency, and the plaintiff should be afforded the opportunity to amend. Brown, 80
S.W.3d at 555. On the other hand, if the pleadings affirmatively negate the existence of
jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an
opportunity to amend. Id.
2. Analysis
          The Texas Whistleblower Act prohibits a state or local governmental entity from
suspending, terminating, or taking other adverse personnel action against a public
employee who in good faith reports a violation of law by the employing governmental entity
or another public employee to an appropriate law enforcement authority. Tex. Gov’t Code
Ann. § 554.002(a)(Vernon Supp. 2004). The Whistleblower Act is designed to enhance
openness in government and compel the government's compliance with the law by
protecting those who inform authorities of wrongdoing. Castaneda v. Tex. Dep't of
Agriculture, 831 S.W.2d 501, 503 (Tex. App.–Corpus Christi 1992, writ denied). Because
the Whistleblower Act is remedial in nature, it should be liberally construed to effect its
purpose. Id.
          The cause of action created by the Whistleblower Act is purely statutory. Thus, to
plead a claim under the Whistleblower Act, Godwin must allege the existence of each of
the following elements: (1) he is a public employee; (2) he acted in good faith in making
his report; (3) the report involved a violation of law; (4) the report was made to an
appropriate law enforcement authority; and (5) he suffered retaliation as a result of making
the report. See Tex. Gov’t Code Ann. § 554.002(a) (Vernon Supp. 2004).
          In his fourth amended petition, Godwin alleged he was a public employee, employed
by the TDCJ, and was demoted within 90 days of reporting to the Governor, the Travis
County District Attorney, the State Auditor, and United States District Judge William Wayne
Justice what he believed in good faith to be violations of law. The TDCJ contends Godwin
did not report a violation of “law” to an “appropriate law enforcement authority.”
          In his letter to then Governor Bush dated January 12, 2000, Godwin sought to
inform Governor Bush of what he believed to be dangerous trends in security in the Texas
prison system. Godwin accused TDCJ’s administration of deceiving both the Governor and
the citizens of Texas by indicating that there was no threat to security in the prison system. 
According to Godwin, the TDCJ administration placed a low priority on officer training and
safety by failing to allocate sufficient resources to the Training Department.
          By subsequent correspondence to the Travis County District Attorney dated
February 7, 2000, which was copied to United States District Judge William Wayne Justice
and the State Auditor, Godwin reiterated his concern about the dangerous shortage of
correctional officers and its negative effect on existing officer safety. According to Godwin,
“[a]vailable documentation indicates the chronic, dangerous shortage of correctional
officers may be due, in part, to deliberate choices made by TDCJ officials to allow vacant
correctional officer positions to remain unfilled, in order to use lapsed salary funds for other
purposes.” Godwin explained that he believed the TDCJ administration was intentionally
leaving correctional officer positions unfilled, in order to realize a substantial savings from
unspent salary money each month. These lapsed salary funds were then used for other
departmental needs, such as computer enhancements and payments to counties for
housing state prisoners in county jails. This practice, according to Godwin, was a possible
violation of the Ruiz Final Judgment.



          Whether the reported incident was an actual violation of any law is not in issue. We
are mindful of our limited role here. Our task is not to determine whether the plaintiff
ultimately wins or loses on judicial review; rather, this Court’s task is to examine the facts
pleaded and to determine whether those facts support jurisdiction in the trial court. See
Univ. of Tex. Med. Branch v. Hohman, 6 S.W.3d 767, 771 (Tex. App.–Houston [1st Dist.]
1999, pet. dism’d w.o.j.).
          Although an employee need not establish an actual violation of law, there must be
some law prohibiting the complained of conduct to give rise to a claim under the
Whistleblower Act. Llanes v. Corpus Christi Indep. Sch. Dist., 64 S.W.3d 638, 642 (Tex.
App.–Corpus Christi 2001, pet. denied). The Whistleblower Act defines “law” to mean: (1)
a state or federal statute, (2) an ordinance of a local governmental entity, or (3) a rule
adopted under a statute or ordinance. Tex. Gov’t Code Ann. § 554.001(1) (Vernon Supp.
2004). Moreover, this Court has interpreted the phrase “reports a violation of the law” to
include “any disclosure of information regarding a public servant’s employer tending to
directly or circumstantially prove the substance of a violation of criminal or civil law, the
State or Federal Constitution, statutes, administrative rules or regulations.” Llanes, 64
S.W.3d at 642; Castaneda, 831 S.W.2d at 503-04. 
          Here, Godwin’s report to the Travis County District Attorney centers on the possible
violation of the Ruiz Final Judgment, a judicial directive aimed solely at the TDCJ. The
Ruiz Final Judgment required TDCJ to “employ sufficient trained security and non-security
staff to provide for and maintain the security, control, custody, and supervision of prisoners,
taking account of the security and custody levels for the prisoner population and the design
of [TDCJ]’s facilities.” Considering this Court’s construction of the phrase “reports a
violation of the law,” and liberally construing the definition of “law” to effect the remedial
purpose of the Whistleblower Act, see Castaneda, 831 S.W.2d at 503, we conclude that
the Ruiz Final Judgment is a law within the meaning of the Whistleblower Act.
          Furthermore, a report is made to an appropriate law enforcement authority if the
authority is a part of a state or local governmental entity or of the federal government that
the employee in good faith believes is authorized to regulate under or enforce the law
alleged to be violated in the report or investigate or prosecute a violation of criminal law. 
Tex. Gov’t Code Ann. § 554.002(b) (Vernon Supp. 2004). Judge Justice presided over
proceedings resulting in the Ruiz Final Judgment. At the time Godwin sent him a copy of
the report dated February 7, 2000, Judge Justice had oversight authority to enforce the
Ruiz Final Judgment. Thus, we conclude Judge Justice is an appropriate law enforcement
authority within the meaning of the Whistleblower Act.
          Therefore, accepting the factual allegations in Godwin’s pleadings as true, we
conclude he has pleaded sufficient facts to support jurisdiction in the trial court. 
Accordingly, Godwin’s cross-appeal is sustained.
E. Conclusion
          We affirm the trial court’s orders denying appellants’ motions for summary judgment,
reverse the trial court’s order sustaining TDCJ’s plea to the jurisdiction, and remand this
cause to the trial court for further proceedings consistent with this opinion.
 
 

                                                                                                                      
                                                               LINDA REYNA YAÑEZ
                                                                           Justice






Opinion delivered and filed this the
31st day of August, 2004.