

# NUMBER 13-15-00563-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MICHAEL A. McCANN,**                                **Appellant,**

**v.**

**SONDRA MORENO AND VICKY CRUMBLISS,**            **Appellees.**

---

### On appeal from the 36th District Court
### of Bee County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Michael A. McCann sued appellees Sondra Moreno and Vicky Crumbliss, two nurses at the prison facility where McCann is an inmate, along with other several members of the medical staff.[1] McCann claimed that appellees wrongfully

---

[1] McCann's original petition named as defendants "Theresa Whitt, M.D.," "Jane and/or John Does at McConnell Unit that have conspired to withhold filing of this suit," "U.T.M.B. Director – John or Jane Doe," "Doctor Morris – Director of McConnell Unit Infirmary," and "LVN's Moreno, Villareal, Crumbless [sic],

lowered the amount of insulin he received as treatment for diabetes and wrongfully altered his insulin distribution time. McCann alleged that by entering these changes, appellees retaliated against him, were deliberately indifferent to his basic needs for sleep and medical care, and impinged upon his religious liberties. McCann also alleged that appellees committed fraud by filing false paperwork related to the alterations. Appellees filed a motion for summary judgment, which the trial court granted without specifying grounds. By his first issue on appeal, McCann contends that the trial court erred in granting summary judgment against his retaliation, free exercise, and deliberate indifference claims.[2] By his second issue, McCann asserts that the trial court erred in denying him discovery concerning his claims. We affirm in part and reverse and remand in part.

## I. BACKGROUND

McCann is an inmate at the William G. McConnell Unit, a facility located in Beeville County, Texas. McCann is a type-one diabetic who receives daily medication and insulin injections from McConnell's medical personnel, as well as daily "finger-stick" blood glucose tests and quarterly "A1C" exams, which indicate how well a patient's blood glucose is controlled over a period of eight to twelve weeks.

McCann filed the instant suit in 2013 concerning a change in his medical care that was made on November 4, 2011. It is undisputed that Dr. Theresa Whitt, a physician at

---

Pharmacy of TDCJ-CID." McCann's first amended petition nonsuited the "Jane and/or John Does at McConnell Unit that have conspired to withhold filing of this suit," and McCann named as additional defendants "Erick Echavarry," "Megan R. Gozales [sic]," and "Donna Randall." However, only Crumbliss and Moreno are parties to this appeal.

[2] McCann does not contest the grant of summary judgment against his state-law fraud claim.

the McConnell unit, reduced McCann's daily insulin injections from three to two, cancelling McCann's regular 10:00 AM injection. The record is not clear as to when McCann had been scheduled to receive his other two injections prior to the change; however, it is undisputed that after Dr. Whitt changed her care plan in November 2011, McCann was thereafter scheduled for injections at 3:00 AM and 6:00 PM. McCann's suit contends that this change left him deprived of sleep and insulin, caused his blood glucose to rise dangerously in the absence of insulin control, and thus caused multiple "severe medical conditions."

This was not the first time such a change had been made in McCann's regimen. Appellees submitted McCann's medical records as summary judgment evidence; the records showed that eight months earlier, at an appointment on March 17, 2011, McCann complained to registered nurse Lori Hudson that his insulin regimen had been reduced from three injections per day to two.[3] Hudson responded to McCann's complaint by restoring his three-per-day injection schedule, but informed McCann that this was subject to change if his next blood glucose test was not improved from a previous "high" result. According to the affidavit of Dr. Steven Bowers, McConnell's department administrator, McCann had been 90% compliant with his scheduled injections up to this point.

Appellees also submitted a log of McCann's daily insulin injections and blood glucose levels from October 2011 to May 2014 (the logs). The logs revealed that in October 2011, just prior to the alteration of his schedule, McCann received most 10:00 AM and 6:00 PM insulin injections, but did not receive any early-morning injections.

---

[3] According to Hudson's chart, McCann's records bore no indication of why the change was made.

3

On November 4, 2011, Dr. Whitt altered McCann's treatment regimen noting that three-per-day insulin was "not showing any improvement in glycemic control." Dr. Whitt cancelled McCann's 10:00 AM injection and ordered that McCann receive stronger doses of insulin at 3:00 AM and 6:00 PM.

On November 6, 2011, McCann complained about the change to his treatment plan. Erick Echavarry, a physician's assistant, reported that he "educated [McCann] on the importance of him [making] an effort to come in the AM for his insulin but patient flat out refuses to try; he stated that he should receive his insulin twice a day at noon and in the PM clinic."

On November 19, McCann filed a complaint with the Texas Board of Medical Examiners concerning Dr. Whitt's alteration of his treatment plan. The appellate record shows that this complaint was scheduled for hearing, but does not show the outcome. On November 22, McCann saw Dr. Whitt and requested that his 3:00 AM injection be rescheduled to 10:00 AM or that he be given Lantus, an alternative medication. After Dr. Whitt denied McCann's request, McCann agreed to try to attend the 3:00 AM injection.

The logs show that over the course of the next year, McCann attended many of the scheduled 3:00 AM injections, but also missed several. Over the same period, McCann's evening blood glucose readings increased.

Medical records indicate that McCann developed multiple infections over this period: an eye infection; infection-related abdominal pain, which intensified despite treatment with antibiotics; and a urinary tract infection which was treated with two additional courses of antibiotics.

Additionally, Dr. Bowers's affidavit states that on February 15, 2012, Echavarry

diagnosed McCann with another urinary tract infection following McCann's complaints that his "kidneys were killing him." However, the medical records for these and all subsequent clinic visits are absent from the summary judgment record; only Dr. Bowers's affidavit addresses McCann's medical history in 2012 and 2013. According to Dr. Bowers, Echavarry ordered antibiotics and noted that McCann was not receiving insulin in the mornings. Echavarry also referred McCann to an endocrinologist, ordered the 3:00 AM injections stopped, and made "adjustments" to compensate for the stoppage. However, Dr. Bowers did not specify what adjustments were made.

Dr. Bowers's affidavit further stated: that on March 8, 2012, Dr. Whitt reviewed McCann's chart and entered orders, though Dr. Bowers's affidavit was not clear what these orders were; that McCann refused or failed to attend scheduled medical treatment multiple times in 2012, including refusing to board a bus for a visit to an endocrinologist on April 22; and that on April 26, McCann returned high glucose results and presented in the clinic with diabetic foot lesions that had developed "viral papules." Dr. Bowers summarized a clinic visit from May 14, 2012:

> Mr. McCann saw NP Hudson in the Chronic Care Clinic for follow-up on his diabetes. NP Hudson noted the patient only had 50% compliance with his medication. The record notes the patient stated that he was a Jewish druid and was not going to get up before the sun, that he was sleep deprived, and could not sit in the cage for insulin at all times. The patient further indicated that 3:00 AM is not a normal insulin regimen and he was being forced to do it. NP Hudson noted that the patient was unwilling to come to his 3:00 AM insulin dose because it was against his religion and due to sleep deprivation. NP Hudson informed the patient that she would not discuss these issues with him and that he needed to speak with Dr. Whitt about wanting 10:00 AM insulin. The record does note that the patient's April 30, 2012 A1C results were higher at 9.6 due to his medication non-compliance.

Dr. Bowers's affidavit further stated that on September 14, 2012 McCann developed an

5

abscess in his left arm which was treated with several forms of antibiotics and eventually required hospitalization. Appellees also submitted several forms which documented occasions when McCann had "refused treatment."

Nurse Hudson restored McCann's access to 10:00 AM injections in January 2013, but according to Dr. Bowers's affidavit, this had no meaningful impact on McCann.

In support of his response to appellees' motion for summary judgment, McCann submitted several documents labeled "affidavits" from his fellow inmates concerning the alteration in his medical treatment and the conduct of McConnell medical staff. [4] McCann's affidavit stated as follows:

> This modification was done solely to free up the nurses at this time, not for my health. Needless to say, I am sleep deprived if I go at 3 a.m. This is also against my religion. Since other diabetics receive their ten a.m. insulin that are not as bad off as I am then Dr. Whitt and LVN Moreno did such with malice and bad faith.
>
> Defendants Whitt and LVN Moreno filed a complaint that I help people with their problems against her; such redress is allowed by law and shows Dr. Whitt's and LVN Moreno's determination to wield the sword as they deem fit. LVN Moreno altered medical reports saying what she wanted, not the truth.
>
> When my insulin was altered I had severe complications with my kidneys with two infections and one bladder infection. Now I have cysts all over my body which have left scars all over my body. . . .
>
> My blood sugar levels were a lot better before altering on November 4, 2011 than after. LVN Moreno has given Dr. Whitt affidavits for Texas Medical Board complaints and numerous law suits from Dr. Whitt's incompetence. Had [Dr.] Whitt reviewed my medical chart she would have known that I never go to my three a.m. insulin. She knows that Ms. Hudson gave me my ten a.m. insulin because I do not go at 3 a.m.

---

[4] These affidavits contain few of the formalities required of affidavits. However, appellees did not object to any defects in the form of the affidavits. *See* Tᴇx. R. Cɪv. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.").

6

I never had kidney infections before this altering of my insulin. My readings were mostly normal before the altering of my insulin. Now my diabetic flow sheets reflect from 300 to 500 on my blood sugars. . . .

After this altering and my suffering Dr. Whitt refused to give me back my ten a.m. insulin. As a matter of fact, she removed all the diabetics 10 a.m. insulin. When some of the inmates had adverse side effects she gave them back their 10 a.m. insulin. . . . The people that LVN Moreno and Dr. Whitt gave back the insulin to at ten a.m. are not even close to being as bad off as I am. I have been retaliated by Dr. Whitt and LVN Moreno ever since I filed this cause of action.

My religion dictates that I do not eat or rise before sunrise. Hence my denial of the three a.m. insulin. Dr. Whitt knew when she removed my ten a.m. insulin I would have complications.

McCann also submitted affidavits from his fellow inmates. The inmates stated variously that Moreno and Dr. Whitt had made anti-Semitic remarks toward or about McCann, and that Moreno ran the medical facility, was very close to Dr. Whitt, and had great influence with her. They further stated that Moreno and Crumbliss had wrongfully denied McCann medical care when he was in pain at some point, had "always mess[ed] with" McCann's medical paperwork, had laughed about it, and had told the other nurses "this is what happens when you screw with us." Also, one inmate specifically stated that on "November 4, 2011, I overheard LVN Moreno tell Dr. Whitt that all diabetics['] ten AM insulin must be removed to free up the nurses." McCann also submitted another affidavit from fellow inmate Fred Hoffman, which read as follows:

I have known Dr. Whitt for little over a year now and have witnessed by her actions using her office to cause harm to multiple diabetics on my unit. I have overheard Dr. Whitt use an anti-Semitic remark in regards to Mr. McCann. Until she did so I did not even know his faith myself. Dr. Whitt has had some nurses and [nurse] Hudson file affidavits that are false claims against Mr. McCann. . . . The infirmary takes on average anywhere from one to three hours to get all the diabetics their three a.m. insulin shots. Not to mention, this is the only unit I have been on that does clothing exchange (necessities) at 4:00 a.m. as well. They do a roster count at 11:30 p.m.,

7

breakfast from 2:00-3:00 a.m., hopefully insulin by around 3:30-4:30 a.m., clothing exchange after you get back from insulin whenever that might be, law library at 5:00 a.m., and reporting for work at 6:00-6:30 a.m. in the garment factory.

Appellees moved for summary judgment on grounds of qualified immunity, Eleventh Amendment immunity, sovereign immunity, and official immunity. The trial court granted the motion, and this appeal followed.

## II. FIRST AND EIGHTH AMENDMENT CLAIMS

By his first issue, McCann argues that the trial court erred in granting summary judgment against his claims for violations of his First Amendment right to be free from retaliation for the exercise of protected speech rights, his First Amendment right to the free exercise of religion, and his Eighth Amendment right to be free from cruel and unusual punishment. McCann asserts that appellees failed to meet their summary judgment burden to establish that no genuine issue of material fact exists as to his claims. In response, appellees contend that it was McCann's burden to overcome their presumptive entitlement to qualified immunity and that McCann failed to satisfy this burden.

### A. Qualified Immunity Generally

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from civil liability insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A good-faith assertion of qualified immunity alters the usual summary judgment

8

burden of proof, shifting it to the plaintiff to show that the defense is not available. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *Leo v. Trevino*, 285 S.W.3d 470, 480 (Tex. App—Corpus Christi 2006, no pet.). "The plaintiff therefore bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015); *see Leo*, 285 S.W.3d at 480; *Scott v. Godwin*, 147 S.W.3d 609, 616 (Tex. App.—Corpus Christi 2004, no pet.).

Here, appellees pleaded with apparent good faith that they were entitled to qualified immunity against McCann's First and Eighth Amendment claims under section 1983, and moved for summary judgment on this ground. *See Scott*, 147 S.W.3d at 616 (showing applicability of qualified immunity to a prisoner's First Amendment retaliation claim); *Umar v. Scott*, 991 S.W.2d 512, 517 (Tex. App.—Fort Worth 1999, no pet.) (same as to a prisoner's First Amendment free exercise of religion claim); *Neimes v. Ta*, 985 S.W.2d 132, 141 (Tex. App.—San Antonio 1998, pet. dism'd by agr.) (same as to a detainee's Eighth Amendment cruel and unusual punishment claim); *see also* 42 U.S.C.A. § 1983 (West, Westlaw through P.L. 114-143). Thus, McCann had the burden to introduce evidence sufficient to overcome the defendant's presumptive qualified immunity in order to survive summary judgment. *See Cass*, 814 F.3d at 728; *Leo*, 285 S.W.3d at 480.

To overcome a defendant's entitlement to qualified immunity at the summary judgment stage, we ask whether the evidence is sufficient to create a fact issue as to whether: (1) the official's conduct violated a federal right; and (2) under the circumstances, that right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See Mullenix v. Luna*, 136 S.Ct.

305, 308 (2015); *Tolan v. Cotton*, 134 S.Ct. 1861, 1865–66 (2014); *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016); *Trent*, 776 F.3d at 376. We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

## B.     Qualified Immunity to Appellant's Retaliation Claim

McCann argues that the trial court erred by granting summary judgment against his retaliation claim. McCann argues that Moreno, Crumbliss, and Dr. Whitt conspired to alter his treatment in retaliation for the complaints that McCann filed through the grievance system and through the courts.

"Prisoners have a First Amendment right to be free from retaliation for complaining about a prison official's misconduct, and a violation of this right is actionable under 42 U.S.C. § 1983." *Inst'l Div. of Tex. Dep't of Criminal Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010). To establish a violation of the First Amendment right against retaliation, a prisoner must establish "(1) a specific constitutional right [here, protected speech], (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)). The causation element of a retaliation claim requires a showing that but for a retaliatory motive, the complained-of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *see also Wilson v. Gallardo*, 269 Fed. Appx. 367, 368 (5th Cir. 2008) (per curiam). "Only those personally involved in the violation or whose acts are causally connected to it may

10

be liable in a section 1983 action." *See Thomas v. Collins*, 960 S.W.2d 106, 109 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). In sum, to survive summary judgment, McCann had the burden to create a fact issue as to whether, under the circumstances, the retaliatory violation was "sufficiently clear that every reasonable official would have understood that what they were doing violated that right." *See Mullenix,* 136 S.Ct. at 308; *Trent*, 776 F.3d at 376.

Appellees correctly point out that McCann's only evidence of Crumbliss's personal involvement was a vague averment that Crumbliss laughed when McCann was denied medical care at some point. *See Thomas*, 960 S.W.2d at 109. We agree with appellees that McCann has produced no evidence that Crumbliss was personally involved in the alteration or administration of his treatment plan so as to have caused a retaliatory adverse act. *See Powell*, 318 S.W.3d at 892. Rather, all available evidence on this point suggests that Crumbliss was not involved in any contested act. A reasonable jury could not disregard the contrary evidence: Crumbliss's uncontested affidavit that she did not treat McCann for diabetes and the fact that Crumbliss's name does not appear on any of the pertinent medical records from 2011 or 2012. *See Mack Trucks*, 206 S.W.3d at 582. McCann does not direct this Court to any theory of liability upon which Crumbliss could be liable absent any evidence of her personal participation in a violation.

There is some evidence that Moreno personally participated in McCann's treatment and the decision to alter his treatment. For instance, Moreno's signature appears on multiple chart-entries for McCann's insulin injections, and McCann also submitted testimony that Moreno had denied him treatment at some point. McCann also introduced several affidavits from inmates claiming that Moreno had *de facto* power over

11

the department, was close friends with Dr. Whitt, conspired with Dr. Whitt to enact the policy change in question, and that she claimed the change was her prerogative by stating "this is what happens when you screw with us."

Even so, McCann has failed to introduce any evidence that Moreno's retaliatory animus was causally connected to a retaliatory adverse act. Instead, McCann's own evidence implies that the contested acts were the product of neutral criteria, driven by a neutral impetus. *See Allen*, 815 F.3d at 244 ("[A] retaliation claim is only applicable when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." (internal quotations omitted)); *cf. Turner v. Safley*, 482 U.S. 78, 89–90 (1987) (providing that prison administrators may reasonably restrict an inmate's constitutional rights if, among other things, the restrictions bear a rational connection with a *neutral* governmental objective). McCann submitted two affidavits which stated that Dr. Whitt had uniformly ordered the cancellation of 10:00 AM insulin injections for all diabetics in the unit, and had done so in order to free up the unit's medical resources. Even if Dr. Whitt was acting solely at Moreno's behest, McCann has not introduced any evidence that Moreno had arranged for this group-wide scheduling change to retaliate against all of the facility's diabetic inmates *en masse. Cf. Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 68 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that to show retaliation under a uniform corporate policy, plaintiff must produce evidence that he was treated differently than other similarly situated persons).

Moreover, McCann's affidavit states, "I have been retaliated by Dr. Whitt and LVN Moreno [sic] ever since I filed this cause of action." McCann filed his cause of action in 2013, whereas the alleged retaliatory act occurred in 2011. *See, e.g., Slattery v. Swiss*

*Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding there was no basis to infer retaliation where protected activity occurred after the alleged string of retaliatory acts began); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[To show retaliatory intent, the] inmate must produce direct evidence of motivation or . . . allege a chronology of events from which retaliation may plausibly be inferred."). This tends to show the absence of causation, particularly given the fact that a similar change was made to McCann's treatment plan earlier in 2011, which McCann does not contend was a retaliatory act.

In light of McCann's failure to produce any evidence supporting the causation element of a retaliation claim (and the ample evidence which suggests the contrary), *see McDonald*, 132 F.3d at 231, we conclude that McCann failed to carry his summary judgment burden of creating a fact issue as to whether appellees violated his clearly established right to be free from retaliation. *See Mullenix*, 136 S.Ct. at 308; *Tolan*, 134 S.Ct. at 1865–66; *Allen*, 815 F.3d at 244. McCann has therefore failed to overcome appellees' entitlement to federal qualified immunity against his retaliation claim. *See Trent*, 776 F.3d at 376; *Leo*, 285 S.W.3d at 480. The trial court did not err in granting summary judgment against McCann's retaliation claim.

## C. Qualified Immunity to Appellant's Claims Regarding Free Exercise of Religion

McCann next claims that his faith—which he and another inmate describe as "Jewish Druid"—categorically prohibits him from rising before dawn. However, McCann does not introduce any evidence to show that waking before sunrise is prohibited or even

discouraged by the tradition of Druidic-Judaism.[5]   As the Fifth Circuit remarked in

rejecting a free exercise claim supported only by an inmate's self-serving affidavit:

> [Jones] claims his religious beliefs require the TDCJ to serve him nothing but fresh fruits, vegetables, chicken, and fish.   Yet Jones has provided absolutely no evidence that the alternative foods offered to [Nation of Islam] inmates are prohibited by his faith.   Instead, he simply contends that he personally believes that he may not eat those foods.   This lack of evidence, alone, is sufficient for us to find that he has not created a genuine issue of material fact.

*Jones v. Shabazz*, 352 Fed. Appx. 910, 916 (5th Cir. 2009) (per curiam).   Instead, the

first medical record in evidence suggests that McCann told nurse Hudson in April 2011

that his waking schedule was determined not by religious conviction, but by "what was

being served for breakfast in the dining hall."   We find McCann's argument unavailing.

The trial court did not err in granting summary judgment against McCann's free exercise

claim.

**D.     Qualified Immunity to Appellant's Eighth Amendment Claim**

McCann next argues that appellees violated his Eighth Amendment rights when

they denied him midday insulin injections and scheduled him for only one morning

injection at 3:00 AM.   He asserts that "Appellees cannot make Appellant chose between

two constitutional rights," citing *Allen v. City & County of Honolulu.*   39 F.3d 936 (9th Cir.

1994).

It is well settled that the treatment a prisoner receives in prison and the conditions

under which he is confined are subject to scrutiny under the Eighth Amendment.   *Woods

v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).   To establish an Eighth Amendment

---

[5] *Cf. Isaiah* 52:1 ("Awake, awake, O Zion, clothe yourself with strength."); *Psalms* 121:4 ("[H]e who watches over Israel will neither slumber nor sleep.").

violation, a prisoner must satisfy both an objective and a subjective component. *Id.* First, the prisoner must demonstrate the objective seriousness of the deficient treatment or condition: a deficiency "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999); *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Graves v. Tex. Dep't of Corr. Employees*, 827 S.W.2d 47, 48 (Tex. App.—Houston [1st Dist.] 1992, no writ) (categorizing food, warmth, and exercise as basic needs). Sleep undoubtedly counts as one of life's basic needs. *Harper*, 174 F.3d at 720. The Eighth Amendment also imposes a duty on prison officials to ensure that inmates receive adequate medical care as a basic human necessity. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Second, the prisoner must establish that the prison official had the requisite, subjective state of mind: that the "official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Smith v. Harris*, 401 Fed. Appx. 952, 953 (5th Cir. 2010) (per curiam).[6] "However, a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter*, 467 F.3d at 463.

Based on these rules and considerations, the Fifth Circuit recently reversed a district court's dismissal, as frivolous, of an Eighth Amendment claim where an inmate was required to choose between forgoing morning meals or sleeping less than four hours per night. *See Garrett v. Thaler*, 560 Fed. Appx. 375, 380 (5th Cir. 2014) (per curiam).

---

[6] This rule corresponds with the "familiar and workable standard" of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

In *Garrett*, breakfast at the facility began at 2:30 AM and ended an hour later, and the plaintiff was subsequently engaged in basic functions—such as linen exchange, work in a garment factory from 6:00 AM to 3:00 PM, showering, eating, mail call, etc.—until lights out at 10:30 PM. *Id.* at 379. As a result, the inmate regularly received four hours of often-interrupted sleep per night, and he suffered from symptoms of sleep deprivation such as headaches, forgetfulness, and feeling like "a zombie." *Id.* As to the second prong of an Eighth Amendment claim, the prisoner testified that he repeatedly complained to the prison medical staff about the sleep deprivation, who declined to change the schedule or otherwise "respond reasonably to risk, despite their knowledge of the harm that could result from the sleep deprivation." *Id.* at 380 (internal quotations omitted). The court found that these facts could plausibly give rise to a non-frivolous claim for an Eighth Amendment violation. *Id.*

As in *Garrett*, McCann has submitted evidence that Moreno personally participated in an alteration in McCann's medical care regimen required him to choose between two basic necessities: sleep and medical care—that is, receiving less than four hours of sleep per night or receiving only a single shot of insulin per day. *See id.* at 379; *Easter*, 467 F.3d at 463; *Harper*, 174 F.3d at 720. McCann submitted evidence that he was subject to a similar schedule as in *Garrett*, including "breakfast from 2:00–3:00 AM, hopefully insulin by around 3:30–4:30 AM . . . reporting for work at 6:00–6:30 AM in the garment factory" and other activities until "roster count at 11:30 PM." *See Garrett*, 560 Fed. Appx. at 379. As to the first prong of an Eighth Amendment violation, the evidence shows the objective severity of the adverse effects that were at least potentially caused by this choice between sleep and medicine: "sleep deprivation;" a marked increase in

16

blood glucose levels; foot lesions; and infections of his arm, eye, foot, and internal organs. *See Harper*, 174 F.3d at 72. As to the second prong, McCann's testimony and the medical records create a fact issue as to whether he repeatedly brought his issues to the attention of the medical personnel at the McConnell unit, but that neither Whitt nor Moreno changed the schedule or otherwise responded to the situation for the duration of 2012. *See Garrett*, 560 Fed. Appx. at 380; *Farmer*, 511 U.S. at 837.

When viewing this evidence in the light most favorable to McCann, as we are bound to do for purposes of summary judgment, we conclude that McCann carried his burden to at least create a fact issue as to whether Moreno was deliberately indifferent to an objectively serious risk. *See Mullenix*, 136 S.Ct. at 308; *Tolan*, 134 S.Ct. at 1865–66; *Allen*, 815 F.3d at 244; *Woods*, 51 F.3d at 581. "Analysis of deprivation of the minimal civilized measure of life's necessities and deliberate indifference are fact-intensive inquiries not easily determined without discovery." *Garrett*, 560 Fed. Appx. at 380 (citing *Harper*, 174 F.3d at 720) (internal quotations omitted).

As the *Garrett* Court was careful to do, we stress the limited nature of our holding. *See id.* We "emphasize that we do no more than determine that" McCann has created a fact issue, and determine this based solely upon those issues presented in appellant's response to the motion for summary judgment and upon the limited evidence in the summary judgment record. *See id.*; *see also* TEX. R. CIV. P. 166a.

The same does not hold true for McCann's claim against Crumbliss. McCann has not produced any evidence that Crumbliss actually participated in an alleged violation of his Eighth Amendment rights, and he has therefore failed to overcome Crumbliss's presumptive entitlement to qualified immunity.

17

**E.     Summary**

We sustain McCann's first issue only to the extent that the trial court granted summary judgment in favor of Moreno on McCann's Eighth Amendment claim.   We overrule McCann's first issue in all other respects.

### III.     DENIAL OF CONTINUANCE TO SEEK ADDITIONAL DISCOVERY

By his second issue, McCann contends that the trial court erred in generally granting summary judgment without allowing him the opportunity to conduct discovery. We have already concluded that the trial court erred in granting summary judgment on McCann's Eighth Amendment claims against Moreno.   Thus, we consider only whether the trial court erred in granting summary judgment concerning McCann's remaining claims:   his First Amendment retaliation and free exercise claims against Crumbliss and Moreno, and his Eighth Amendment claims against Crumbliss.

When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).   We have considered the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery:   the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought.   *Id.*; *see also Kirby v. Kirby*, No. 13-13-00718-CV, 2015 WL 7730833, at *2 (Tex. App.—Corpus Christi Nov. 30, 2015, no pet.) (mem. op.).

18

In *Joe*, the appellant claimed that the trial court erred in granting summary judgment while denying the plaintiff any opportunity to conduct discovery on the issue of immunity. *See* 145 S.W.3d at 162. The Texas Supreme Court rejected this claim on grounds of immateriality; the court concluded that none of the disputed discovery could have yielded evidence that would raise a fact issue on immunity. *Id.*

Here, as in *Joe*, the materiality of the discovery sought is the dispositive factor on all of McCann's remaining claims. *See id.* McCann does not propose, and we do not perceive, how discovery could yield any form of evidence that is sufficient to counter the evidence which is already in the record: that Crumbliss was not personally involved in any contested act; and that Moreno's actions did not cause McCann to suffer differently from any other inmate so as to create a fact issue on retaliatory causation. Likewise, there is no reason to suspect that appellees are a likely source of relevant evidence concerning McCann's Judeo-Druidistic devotion. *Cf.* TEX. R. CIV. P. 192.3 (stating inadmissibility is not grounds for a discovery objection "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence").[7]

We conclude that the trial court did not abuse its discretion in granting summary judgment against all of McCann's remaining claims despite his claimed need for additional

---

[7] Nor does the length of time that this suit has been on file require a different conclusion. McCann filed the instant suit on August 2013. McCann contends that he sent discovery requests to appellees on August 2014, but that appellees never responded to these requests. However, the first discovery request which actually appears in the summary judgment record was a request for disclosure sent by McCann in September 2015. Thus, when confining our review to the evidence in the record, a two-year pendency does not favor a conclusion that McCann has had inadequate time for discovery. *See, e.g., BMC Software Belg., NV v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (finding six months sufficient for discovery); *see also McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (finding twenty-eight month pendency and one year full discovery period sufficient for purposes of no-evidence summary judgment).

discovery. *See Joe*, 145 S.W.3d at 162; *see also In re Greater McAllen Star Props., Inc.*, 444 S.W.3d 743, 750 (Tex. App.—Corpus Christi 2014, no pet.). We overrule McCann's second issue.

## IV. CONCLUSION

We reverse the trial court's grant of summary judgment as to McCann's Eighth Amendment claim against Moreno and remand this claim to the trial court for further proceedings. We affirm the trial court's grant of summary judgment in all other respects.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
21st day of July, 2016.